J.S45037/15

2015 PA Super 229

IN THE INTEREST OF: T.L.B., A MINOR,    :    IN THE SUPERIOR COURT OF
                                        :         PENNSYLVANIA
                                        :
                                        :
APPEAL OF:                              :
COMMONWEALTH OF PENNSYLVANIA            :
                                        :    No. 1845 MDA 2014

Appeal from the Dispositional Order October 7, 2014
In the Court of Common Pleas of York County
Criminal Division No(s).: CP-67-JV-0000201-2014

BEFORE: BOWES, WECHT, and FITZGERALD,[*] JJ.

OPINION BY FITZGERALD, J.:                    **FILED NOVEMBER 02, 2015**

The Commonwealth appeals from the dispositional order entered in the

York County Court of Common Pleas, dismissing the juvenile complaint

against Appellee, T.L.B.  In this matter, Appellee admitted to the two felony

charges of indecent assault against a victim less than thirteen years of age[1]

("indecent assault"), but the juvenile court found he is not in need of

treatment, supervision, or rehabilitation.  We hold the juvenile court did not

abuse its discretion, where the court credited Appellee's therapist's

testimony that at the time of the dispositional hearing, Appellee's treatment

no longer concerned his sexual behavior and addressed only other mental

health concerns, Appellee's treatment was progressing well, he was not

currently in need of additional treatment, and he was expected to

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3126(a)(7).

successfully complete his one-year treatment program. Accordingly, we affirm.

The underlying incident occurred on September 15, 2013. Appellee was twelve years old at the time and he admitted to touching his twenty-two month old nephew's and four-year old niece's genitals while bathing them.[2] On October 1, 2013, Appellee was adjudicated dependent and placed in the legal and physical custody of the York County Children, Youth and Families agency ("CYF"). In the dependency matter, the court ordered Appellee to comply with treatment with Diakon SPIN Services program ("Diakon").[3]

On April 23, 2014, the Commonwealth filed the instant juvenile complaint against Appellee for the bathing incident.[4] At the time, Appellee was living with a foster mother. On June 25th, Appellee appeared before the juvenile court and admitted to two charges of indecent assault on a victim

---

[2] We glean the ages of the victims from the Commonwealth's brief. **See** Commonwealth's Brief at 5.

[3] The Hon. Andrea Marceca Strong presided over both the instant delinquency matter and Appellee's dependency matter.

[4] The juvenile petition also alleged two counts each of indecent assault against a victim less than thirteen years of age, involuntary deviate sexual intercourse with a victim less than thirteen, aggravated indecent assault of a victim less than thirteen, sexual assault, and indecent assault without consent. When Appellee admitted to indecent assault at the June 25, 2014 hearing, the Commonwealth withdrew the remaining charges. N.T., 6/25/14, at 3.

less than thirteen years old.[5]   Both counts were graded as felonies of the third degree because there was a course of conduct.[6]   **See** 18 Pa.C.S. § 3126(b)(3)(ii); N.T., 6/25/14, at 3, 23.   The juvenile court deferred adjudication pending the completion of a case assessment by the Juvenile Probation department.   N.T., 6/25/14, at 24.   The court further ordered Appellee to remain in the custody of CYF.

The court conducted the adjudication hearing on October 7, 2014.[7]   It noted that because the charges were felonies of the third degree, there was a presumption for adjudication, which "shifts the burden to" Appellee.   N.T., 10/7/14, at 10.   The sole witness was Heather Gorr, Appellee's therapist at Diakon.[8]   At this juncture, we review her testimony in detail.

Gorr testified to the following on direct examination.   Appellee began

---

[5] **See** 18 Pa.C.S. § 3126(a)(7) ("A person is guilty of indecent assault if [he] has indecent contact with the complainant, [or] causes the complainant to have indecent contact with the person . . . for the purpose of arousing sexual desire in the person or the complainant and . . . the complainant is less than 13 years of age[.]").

[6] The record does not indicate any additional instances of indecent assault aside from the September 15, 2013, bathing incident.   Nevertheless, Appellee's counsel agreed to the felony-three grading "for a continuing course of conduct."   N.T., 6/25/14, at 3.

[7] At the time of this hearing, Appellee was thirteen years old and living with the same foster mother.

[8] Gorr testified she was a counselor in the "Diakon Specialized In-Home Program, which focuses on sex offender treatment for juveniles."   N.T., 10/7/14, at 12.

treatment approximately eight months earlier, in February of 2014, before the filing of the instant juvenile petition.[9] *Id.* at 13-14. Appellee was referred to Diakon by CYF "after [it] identified sexual acting out behaviors." *Id.* at 19.

Gorr also stated Appellee "has reported being a victim of sexual abuse," and that the alleged perpetrator, his father, did not agree to the police department's request for a polygraph test. *Id.* at 21-22. We note the juvenile probation officer's case assessment also stated Appellee "made allegations of abuse against his father, his father has not participated in visits or counseling[, and instead] feels he is better off giving [Appellee] the space he's requested." Juvenile Probation Officer's Juvenile Case Assessment, 10/7/14, at 1. The assessment further stated "that previous abuse allegations by [Appellee] against his father [were] unfounded." *Id.* Finally, the juvenile court noted Appellee has been "rat[ed] on the autism spectrum[.]" N.T., 10/7/14, at 36.

At the hearing, Gorr further testified to the following. Appellee receives "counseling or therapy multiples times a week," consisting of "at least one individual session, one family session, and one group therapy session," totaling ten to fifteen hours per week. *Id.* at 13. Diakon and CYF

---

[9] Gorr opined the bathing incident indicated "a mental health concern" and that Diakon "did not feel that it would be appropriate for adjudication." N.T., 10/7/14, at 14. Nevertheless, Appellee admitted to the indecent assault offenses.

were working "very well" together on Appellee's case. *Id.* at 16. Appellee was "authorized" for treatment through February of 2015, and she "fores[aw] him being successfully discharged." *Id.* Gorr recommended Appellee "continue with the Diakon SPIN program until his authorization would be complete." *Id.* at 30.

Gorr further opined to the following. Appellee exhibited "much more of a steady progress in the last four months or so," he did "very, very well in the community," and "there have been no sexual acting out behaviors in over a year." *Id.* at 13-14. Six months earlier, "[t]here was concern . . . related to [Appellee's] mental health, not related to his sexual behaviors," but Gorr currently had no "concerns that would necessitate removal or a higher level of service." *Id.* at 16, 18. Appellee was receiving an "appropriate level of services," and additional treatment "would be too much therapy and . . . would muddy the waters [sic]." *Id.* at 18. On cross-examination, Gorr reiterated Appellee was "receiving a very high level of service[s]" and "additional therapeutic services [were not] warranted at this time." *Id.* at 22.

On direct examination, Gorr opined Appellee showed "a low risk of re-offense." *Id.* at 15. On cross-examination, the Commonwealth asked her whether she was surprised by a psychosexual evaluation, conducted

approximately one year earlier,[10] which stated Appellee was a "moderate risk for sexual reoffending." *Id.* at 22. Gorr responded:

> A psychosexual is a snapshot in time when we gather data from a very brief period of time. It's also based on self-report, familial report, if other agencies are involved, and so, again, we are looking at one period of time. He has been successful in my treatment, so no, therapeutically this makes sense in my opinion.

*Id.* at 22-23. On redirect examination, Gorr reiterated that Appellee "continues to be reassessed," she "view[ed] him as a low risk," and "the recidivism rate has reduced because of his successful completion and treatment." *Id.* at 26, 28.

Appellee's counsel argued Gorr's testimony overcame the presumption of adjudication for the felony charges, Appellee "is receiving the level of services that he needs," and "[h]e has been successful for months . . . in the treatment." *Id.* at 31. The Commonwealth responded, "Just because the juvenile is already receiving some sort of treatment through the Diakon SPIN Program doesn't . . . automatically mean[ ] that he doesn't need to be adjudicated. There are principles of accountability and community safety that need to be addressed." *Id.* at 33.

The juvenile court found Appellee was not in need of treatment, supervision, or rehabilitation. *Id.* at 36. It thus dismissed the juvenile

---

[10] The adjudication transcript indicates the psychosexual evaluation was conducted by Hugh Smith on October 15, 2013. N.T., 10/7/14, at 26.

petition, but directed Appellee to "remain in . . . placement." *Id.* at 37. The court then immediately proceeded to a review hearing in the dependency matter. *Id.* at 39. The Commonwealth timely appealed and, at the court's direction, timely filed a Pa.R.A.P. 1925(b) statement.

Preliminarily, we consider the juvenile court's suggestion that the Commonwealth's issue should be found waived for failure to identify the issue with sufficient detail in its Rule 1925(b) statement. *See* Juvenile Ct. Op., 12/1/14, at 2. The Commonwealth's Rule 1925(b) statement raised one issue as follows: "The juvenile court erred when it denied the petition to adjudicate [Appellee] delinquent after [he] was found to have committed a felony graded indecent assault upon a minor victim." Commonwealth's Statement of Matters Complained of on Appeal, 11/20/14.

"The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii).

While we would agree the Commonwealth's Rule 1925(b) statement could have specifically challenged the finding that Appellee was not in need of treatment, supervision, or rehabilitation, we decline to find waiver. In this case, Appellee admitted he committed the delinquent acts, and the sole question before the court was whether he was in need of treatment,

supervision, or rehabilitation. Furthermore, the juvenile court's opinion aptly addressed the issue now raised in the Commonwealth's brief—whether the evidence established Appellee was in need of further treatment. *See Commonwealth v. Laboy*, 594 Pa. 411, 415, 936 A.2d 1058, 1060 (2007) (declining to find waiver for perceived failure to adequately develop sufficiency of evidence claim where matter was "relatively straightforward drug case," evidentiary presentation spanned "mere thirty pages of transcript," and trial "court readily apprehended [defendant's] claim and addressed it in substantial detail").

The Commonwealth argues the court abused its discretion in finding Appellee was not in need of treatment, rehabilitation, or supervision. In support, it cites 42 Pa.C.S. § 6341(b)'s presumption for delinquency in felony offenses. The Commonwealth also advances the following arguments. Appellee's therapist, Gorr, testified he should continue receiving "a high level of services." Commonwealth's Brief at 10. Indeed, the juvenile court required Appellee to "comply with the Diakon sexual offender treatment program," and this order is contrary to its finding that he was not in need of treatment. *Id.* at 10-11. Additionally, the juvenile court's finding that Appellee "'completed' his offense related treatment is . . . not supported by the record, when the entirety of his mental health related treatment is related to preventing sexual offenses." *Id.* at 12. The juvenile court also "disregard[ed] the separate role and capabilities of Juvenile Probation" and

CYF, where "the goal of delinquency is the protection of the public interest" in addition to the best interest of the child. *Id.* The Juvenile Probation department's "YLS assessment" determined Appellee was at moderate risk for reoffending. Finally, the Commonwealth asserts the juvenile court exhibited bias and ill will, as its opinion stated the Commonwealth "[i]n this matter and similar cases . . . has been seeking adjudications for purely punitive purposes[.]" *Id.* at 14. We find no relief is due.

We note the relevant standard of review:

> The Juvenile Act grants juvenile courts broad discretion when determining an appropriate disposition. . . . We will disturb a juvenile court's disposition only upon a showing of a manifest abuse of discretion.

*Interest of C.A.G.*, 89 A.3d 704, 709 (Pa. Super. 2014) (citations omitted).

In *Commonwealth v. M.W.*, 641 Pa. 633, 39 A.3d 958 (2012), the Pennsylvania Supreme Court held an adjudication of delinquency requires both findings "(1) that the juvenile has committed a delinquent act; and (2) that the juvenile is in need of treatment, supervision, or rehabilitation." *Id.* at 634, 39 A.3d at 959.

> This is so even where the delinquent act constitutes a felony because, while the commission of such an act presumptively supports a finding that the juvenile is in need of treatment and supervision . . . the juvenile court must still make that finding after allowing for other evidence. 42 Pa.C.S.A. § 6341(b) ("In the absence of evidence to the contrary, evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment, supervision or rehabilitation.").

*Id.* at 646 n.9, 39 A.3d at 966 n.9.

In *M.W.*, the Commonwealth filed a robbery delinquency petition against the juvenile. *Id.* at 635, 39 A.3d at 959. The juvenile court found he committed the acts, placed him on interim probation, but deferred adjudication. *Id.* "Later that same day," another judge adjudicated the juvenile delinquent on an unrelated theft delinquency petition and committed him to treatment, rehabilitation, and supervision. *Id.* at 635, 39 A.3d at 959-60. Subsequently, the first judge discharged the robbery delinquency petition, "noting [the juvenile] 'will be adjudicated on the [theft] petition [and] will still receive treatment and supervision.'" *Id.* at 635, 39 A.3d at 960. The Commonwealth appealed. *Id.*

Much of the Pennsylvania Supreme Court's decision was addressed to its holding, "that under the Juvenile Act, in order to adjudicate a child delinquent, the juvenile court must (1) determine that the juvenile has committed a delinquent act, **and** (2) determine that the juvenile requires treatment, supervision, or rehabilitation." *See id.* at 646, 39 A.3d at 966. It then remanded for the juvenile court to determine whether the juvenile "is in need of treatment, supervision, or rehabilitation." *Id.* We note the *M.W.* decision, however, did not discuss the juvenile court's discharge of the robbery petition on the rationale that the juvenile would receive treatment and supervision through the theft adjudication. *See id.* at 635, 646, 39 A.3d at 960, 966. Instead, the Court merely directed that on remand, the

juvenile court may enter an adjudication of delinquency only if it found the juvenile in need of treatment, supervision, or rehabilitation. *Id.* at 646, 39 A.3d at 966. "If, however, the court concludes [the juvenile] is not in need of treatment, supervision, or rehabilitation, it should dismiss the proceeding, terminate jurisdiction, and discharge" him. *Id.*

As stated above, "[t]he Juvenile Act grants juvenile courts broad discretion when determining an appropriate disposition," and in the case *sub judice*, we hold the juvenile court did not abuse its discretion. *See C.A.G.*, 89 A.3d at 709. At the adjudication hearing, Appellee's counsel and the juvenile court both addressed the statutory presumption for adjudication for felony offenses. *See* 42 Pa.C.S. § 6341(b); N.T., 10/7/14, at 10, 31, 35; *see also* Juvenile Ct. Op. at 3. In its opinion, the juvenile court found Appellee had been in treatment for several months before the adjudication and disposition hearings, he "has made progress in his treatment," "his treatment no longer focuses on the delinquent act, but has progressed . . . to focus on other mental health concerns," and he "completed all treatment relevant to the delinquent act." Juvenile Ct. Op. at 4.

We reject the Commonwealth's argument that at this stage, the juvenile court was required to consider community protection. The Commonwealth cites the following passage in *In re R.D.R.*, 876 A.2d 1009 (Pa. Super. 2005):

> [T]he Juvenile Act requires the juvenile court to consider the protection of the public interest, and to devise a

> sentence best suited to the child's treatment, supervision, rehabilitation, and welfare, under the individual circumstances of each child's case.

Commonwealth's Brief at 13 (quoting **R.D.R.**, 876 A.2d at 1014). However, this statement addresses the factors in sentencing a juvenile who has already been adjudicated delinquent. **R.D.R.**, 876 A.2d at 1014 (addressing juvenile's argument that court ordered him to pay fines without considering his ability to pay). Instead, **M.W.** clearly delineated only two factors for the initial finding of delinquency: the juvenile's commission of the acts and his need for treatment, supervision, or rehabilitation. **M.W.**, 614 Pa. at 634-35, 642, 39 A.3d at 959, 964.

We also disagree with the Commonwealth's summation that **M.W.** "held that . . . the fact that the juvenile is already in treatment is an improper basis for denying adjudication." **See** Commonwealth's Brief at 11. A careful reading of **M.W.** reveals no articulation of such a holding. Although the **M.W.** Court remanded for the juvenile court to determine whether the juvenile was in need of treatment, the Supreme Court did not discuss the juvenile court's rationale for discharging the robbery petition— that the juvenile would receive treatment and supervision through the theft adjudication. **See M.W.**, 614 Pa. at 635, 646, 39 A.3d at 960, 966. Nevertheless, we may distinguish the facts of **M.W.** from those in this case. In **M.W.**, the juvenile was ordered to undergo treatment as a result of his delinquency adjudication for theft, and the juvenile court found no additional

rehabilitation for robbery was necessary. *Id.* at 634, 39 A.3d at 959-60. In this case, Appellee was ordered to comply with treatment at Diakon in his dependency matter, and that treatment, by the time of the dispositional hearing, no longer addressed his sexualized behavior. Instead, his treatment had evolved to concern only his mental health generally. Furthermore, the juvenile court credited Gorr's testimony that he had not acted out in sexualized behavior in more than one year.

Finally, we address the Commonwealth's contention that the juvenile court acted with bias and ill will. The Commonwealth refers to the following statement in the court's opinion:

> It is important to note this Court's concern with [the] delinquency process in York County. Often, the Commonwealth, in this matter and other similar cases brought before it, has been seeking adjudications for punitive purposes by requesting an adjudication and disposition that ultimately does nothing more than label the juvenile and demand he pay costs and fees.

*See* Juvenile Ct. Op. at 4. In light of the juvenile court's thorough discussion of the evidence in this case, we do not find it acted with bias or ill will. As the juvenile court did not abuse its discretion in finding Appellee was not in need of treatment, rehabilitation or supervision, we affirm its order dismissing the juvenile petition.

Order affirmed.