J-S39014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M., A JUVENILE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.M. | : | No. 3501 EDA 2018 |

Appeal from the Order Entered October 11, 2018
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-JV-0000013-2018

BEFORE:   GANTMAN, P.J.E., STABILE, J., and STEVENS*, P.J.E.

MEMORANDUM BY GANTMAN, P.J.E.:               **FILED AUGUST 19, 2019**

Appellant, J.M., appeals from the dispositional order entered in the Delaware County Court of Common Pleas, following Appellant's adjudication of delinquency for rape.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.  Procedurally, we add Appellant timely filed a post-dispositional motion on October 22, 2018, and a supplemental post-dispositional motion on October 26, 2018.  On October 30, 2018, the court denied Appellant's motion.  Appellant timely filed a notice of appeal on November 27, 2018.  The court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and none was filed.

Appellant raises the following issue for our review:

---

[1] 18 Pa.C.S.A. § 3121(a)(1).

---

\*   Former Justice specially assigned to the Superior Court.

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S POST DISPOSITIONAL MOTION FOR A NEW HEARING, WHERE THE ADJUDICATION OF DELINQUEN[CY] TO A CHARGE OF RAPE, IS AGAINST THE WEIGHT OF THE EVIDENCE AS THE OVERWHELMING IMPORT OF THE EVIDENCE SHOWS CONSENSUAL SEXUAL INTERCOURSE BETWEEN VICTIM AND APPELLANT AND THAT VICTIM ONLY COMPLAINED ABOUT HAVING BEEN RAPED AFTER SHE WAS CONFRONTED BY HER BOYFRIEND ABOUT THE SEXUAL ENCOUNTER WITH APPELLANT.

(Appellant's Brief at 4).

The following principles apply to a weight of the evidence claim:

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Small*, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Nathaniel C. Nichols, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented.

(*See* Trial Court Opinion, filed January 15, 2019, at 2-5)[2] (finding: Victim provided vivid and credible testimony at adjudicatory hearing detailing how Appellant assaulted her during social gathering; while in bedroom alone together, Appellant began kissing Victim and when she told Appellant she did not want to continue, he did not stop; Victim's narrative described how Appellant held her down (which was consistent with photographic evidence of bruising), forcibly removed her clothing, and violated her body, as well as how Victim communicated her rejection of Appellant's advances; other witnesses testified to Victim's request not to walk home alone and not to allow Appellant to accompany her; on day after encounter, Appellant texted Victim that no one needed to know about it; Victim's credible rendition of events was clear and accurate; Victim's delay in reporting rape was readily explained; verdict was not against weight of evidence).  Accordingly, we affirm on the basis of the trial court's opinion.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/19

---

[2] Although signed by the Honorable Linda A. Cartisano, the trial court opinion was prepared and written by Judge Nichols before he retired.

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
JUVENILE DIVISION**

| | |
|---|---|
| **IN RE: INTEREST OF J.M.,** | No. CP-23-JV-13-2018 |
| a Juvenile | |

Megan Price, Esquire, Attorney for Commonwealth
Lindsay Allison McDonald, Esquire, Attorney for Juvenile

CARTISANO, J.[1]                                                    FILED:  1/15/19

## OPINION

### I.      Background.

On January 8, 2018, a Juvenile Petition was filed charging this young man, J.M., with the

following charges: Rape – Forcible Compulsion (a first degree felony)[2]; Involuntary Deviate

Sexual Intercourse[3]; Sexual Assault (a second degree felony)[4]; Aggravated Indecent Assault[5];

Indecent Assault[6]; and, Indecent Exposure[7].  After a hearing conducted on September 13, 2018,

and after due consideration, J.M., was adjudicated delinquent of the charge of Rape.  The court,

in preparation for the subsequent proceeding, ordered a psychosexual evaluation.

The required disposition hearing – calling for an evaluation of the need for treatment,

supervision and rehabilitation – was held on October 11, 2018.  *See generally* 42 Pa. C.S.A.

§6302 (Definitions under Juvenile Act – Delinquent child).  The court rendered such a finding

---

[1] This case was tried before (and Opinion prepared by) now retired jurist, Nathaniel C. Nichols. This court has conducted an independent appraisal of the record and the Opinion.  As such, we have no hesitation in subscribing to the careful analysis set forth and adopt it *in toto*.
[2] 18 Pa.C.S.A. §3121 (a)(1) & (2) (first degree felony).
[3] 18 Pa.C.S.A. §3123 (a)(1) & (2) (first degree felony).
[4] 18 Pa.C.S.A. §3124.1 (second degree felony).
[5] 18 Pa.C.S.A. §3125 (a)(1) & (2) (second degree felony).
[6] 18 Pa.C.S.A. §3126 (a)(1) (second degree misdemeanor) & (a)(2) (first degree misdemeanor).
[7] 18 Pa.C.S.A. §3127 (dependent on proof, either first or second degree misdemeanor).



and its disposition included: placement on probation; financial obligations; compliance with the recommendations of the September 14, 2018, completed psychosexual evaluation by Dr. Catherine Surbeck, including treatment in the Sexually Abused and Abusive Youth (SAAY) program, abstinence from pornography and other sexual materials; compliance with curfew requirements and access to cell phone and internet use (as determined by probation and J.M's parents); and no direct/indirect contact with the victim). In addition, despite juvenile probation's position to the contrary, the court (based on the history presented and the testimony) insisted that the juvenile undergo a drug and alcohol evaluation and comply with any recommendations that result. An appeal was timely filed thus necessitating this Opinion.

## II. The Adjudicatory Hearing.

The hearing on the Delinquency Petition revealed that the alleged victim ("Victim") was assaulted while attending a social gathering on the evening of November 17, 2017 in Broomall, Delaware County, Pennsylvania. The Victim's vivid and credible testimony related the events of that evening. It originally began as a get-together among a small group of girls. Later several boys, including J.M., arrived in the company of two cases of beer. During the evening, a portion of the group collected in an upstairs bedroom. At one point, the Victim occupied a connected bathroom. Upon exiting, she found her friends adjourning downstairs. That left only J.M. in the bedroom with her. He shut the bedroom door, approached the Victim and began kissing her on the lips. J.M. then closed and locked the bathroom door, pushed the Victim onto the bed and continued kissing her. The victim told J.M. she did not want him to continue. The Victim proceeded to offer a detailed description of her resistance to the Juvenile's advances. Her narrative included how she was held (which proved consistent with photographic evidence of bruises she sustained), how she communicated her rejection of the advances, the Juvenile's forcible removal of articles of clothing (including the difficulties he encountered due

to her leg brace) and his violation of her body. She also described how J.M.'s assault ended when another youth knocked on the outside of the bedroom door. The Victim yelled for the person to enter. The intervener responded that the door was locked. The interruption allowed the Victim to end the Juvenile's maleficent ministrations, pull her underpants and tights back into place and exit the bedroom. She then left the home and began to walk up the street. She asked some friends to walk with her and not allow J.M. to accompany her. J.M. followed her and pressed for her to continue their relations. Other witnesses corroborated the Victim's efforts not to be left alone with J.M. One witness recounted physical manifestations of Victim's anxiety and nervousness as she left the party's premises. The Victim explained that the Juvenile slapped her and, in the ensuing days, sent texts about continuing where they left off. When the Victim's continuous rejection of these advances finally convinced J.M. that his imprecations were for naught, he began texting that no one needed to know about their liaison. A record of the texts messages (from the following day) between the two, were presented to the court for review. Among other things, the Juvenile texted, several times, "It didn't happen." In the context of the text message exchange, it is quite clear that something DID occur. The court received a substantial and trustworthy record upon which to conclude, beyond a reasonable doubt, that the Juvenile acted in the fashion recited.

The court recognizes that Juvenile's counsel carefully cross-examined the Victim and highlighted various aspects of her actions and inactions that might tend to undercut the veracity of her rendition of events. However, the Victim explained herself in a candid fashion. So, despite the weaknesses that might have been exposed, the court recognizes that the Victim, as a minor, may not have used the most mature or sophisticated judgment in her post-incident activities. We will not fault her for her youthful naiveté.

The Juvenile testified at length on his own behalf. He was understandably nervous. However, the content of his testimony did not provide the court with a sense of certitude. While he acknowledged that the Victim expressed reservations or a request to delay an encounter, J.M. expressed his desire to engage with the Victim. The Juvenile flatly denied that the Victim ever said, "No." While he acknowledged that the two engaged in brief oral sex, he also claimed that he did not forcibly impose himself upon her in any way. The photographic evidence of bruises on the Victim's arms could not be explained by J.M. The description of how the Victim's clothing (upper and lower body articles) were removed from her body does not appear to be sensible since she supposedly got dressed very quickly to allow the entry of the interveners at the door. The general presentation by the Juvenile showed that some testimony squared with some of the Victim's testimony, but, when speaking directly to the events which gave rise to the Petition, J.M.'s version rejected the Victim's claims of non-consensual relations. Specific note was taken of the Juvenile's questionable explanation of his text message written shortly after the incident: "Can we just forget ab[out] it and if anyone asks it never happened[.] Cuz [sic] it doesn't really doesn't count[.] i [sic] mean come on." Overall, the Juvenile's testimony seemed questionable as to the key elements of the alleged misdeed.

III.     The Adjudication of Delinquency.

The facts - as found - were fully supported by the record. Juvenile's counsel deserves credit in zealously addressing the issues through thorough cross-examination. At the same time, we do not decide cases on the efficacy of defense tactics. Our task: resolve the issues based upon the impression derived from the testimony of witnesses and the reliability ascribed to that testimony. Here, the victim's testimony left the court will little doubt that her credible rendition of events was clear and accurate. The delay in her reporting, in the first instance, was readily explained. The simple fact of delay does not inevitably eliminate the prospect that the assault

occurred. In any event, this court carefully weighed both sides of the prompt complaint argument and felt that the explanation provided, within the context of the entire case exposition, did not undercut the Victim's portrayal of the events at issue.

As previously outlined, the evidence from the complainant was sufficiently articulated in a positive and believable manner. This justified this court's finding that the elements of the Rape offense were proven beyond a reasonable doubt. These determinations rest strictly within the court's purview and, given the record, there exists a sound basis for those findings.

> When examining a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, this Court employs a well-settled standard of review:
>
> > When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged.

*In Interest of J.G.*, 145 A.3d 1179, 1188 (Pa.Super. 2016). The facts adduced met the applicable standard to support our delinquency finding.

In assessing a weight of the evidence challenge, the court applies the standard that the evidence presented at trial "... was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." *In re J.B.*, 630 Pa. 124, 156, 106 A.3d 76, 95 (2014) (delinquency proceeding). As observed previously, the Victim's testimony transcended the requisite threshold in establishing the delinquent conduct beyond a reasonable doubt.

In sum, neither a challenge to the sufficiency of the evidence nor the weight of the evidence offers an availing basis for the juvenile's claim for relief.

IV. <u>Disposition following the Juvenile Adjudication.</u>

Having rendered a determination regarding the juvenile's culpability, the law requires a significant additional step in handling the juvenile delinquency case. *See* 42 Pa. C.S. § 6352(a) (Disposition of delinquent child). *See also id.* at §6352 (a)(2), (3), (5) & (6)(potential specific dispositional consequences). Here, we are not dealing with liberty interests in the same way as in a criminal prosecution. Our primary concern rests not in punishment or in isolating a law-breaker from society. The Juvenile Act's mandate focuses on treatment, rehabilitation and supervision. *See Commonwealth v. M.W.*, 614 Pa. 633, 642, 39 A.3d 958, 964 (2012)("... the Juvenile Act requires a juvenile court to find that a child has committed a delinquent act *and* that the child is in need of treatment, supervision or rehabilitation.")(emphasis supplied by high court). At the same time, "[a] determination that a child has committed a delinquent act does not, on its own, warrant an adjudication of delinquency." *Id.* at 646, 39 A.3d at 966. *See In re T.L.B.*, 127 A.3d 813, 818-19 (Pa.Super. 2015)(holding that juvenile court did not abuse its discretion in determining that juvenile was not in need of treatment, supervision or rehabilitation when, at the time of a deferred disposition hearing, juvenile completed the sex offender portion of his psychological treatment ordered as part of his dependency matter and had not exhibited sexualized behavior in over a year). Moreover, the Commonwealth bears the burden of proving, beyond a reasonable doubt, that the juvenile needs treatment, supervision or rehabilitation. *In the Interest of N.C.*, 171 A.3d 275, 283 (Pa.Super. 2017). At the same time, the commission of a delinquent act which would constitute a felony creates a presumption that the juvenile is in need of treatment and supervision. *Commonwealth v. M.W.*, 614 Pa. 633, 646 n.9, 39 A.3d 958, 966 n.9 (Pa. 2012). The presumption may be rebutted by the presentation of other evidence. *See* 42 Pa. C.S. § 6341 (b).

With those concerns considered, this court convened for its disposition inquiry. At that time, a court-ordered evaluation from licensed psychologist Dr. Catherine Surbeck was received into evidence. The court also considered the sworn testimony and recommendations of the juvenile probation representative.

Recognition and responsibility for misbehavior present a fundamental focus of rehabilitation. The nature of the offense and the information considered at the disposition hearing offered proof, beyond a reasonable doubt, of juvenile's present need for intervention, counseling and supervision. We recognize the responsibility to "...provide balanced attention to the protection of community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community...." *See* 42 Pa. C.S. § 6301 (b)(2)(Purposes of Juvenile Act) & § 6352(a) (Disposition of delinquent child).

In light of the above, it would be utterly irresponsible for this court to allow this juvenile to evade the plain need for intervention. Our disposition assures the juvenile fully comprehends the significance of his departure from proper standards of conduct and the effect his decision-making had on the victim and on others generally. Moreover, the juvenile's prior history and the involvement of the ingestion of alcohol as part of the picture of the transgression ineluctably underscores the need for a drug and alcohol evaluation and compliance with any recommendations. Both J.M. and his family should embrace the disposition as a mechanism of assuring his appreciation for the deviations from legal norms (both those acknowledged and

those denied). His meaningful assessment and acceptance of the recommendations will allow him to reap the benefits of the rehabilitative efforts and supervision. Certainly, viewed objectively, this disposition meets the juvenile's best interests.

BY THE COURT:

LINDA A. CARTISANO, J.