J-S69008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.L.D., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.L.D., A MINOR | No. 787 MDA 2018 |

Appeal from the Dispositional Order Entered April 9, 2018
In the Court of Common Pleas of York County
Juvenile Division at No(s):
CP-67-JV-0000165-2018
CP-67-JV-0000233-2018

BEFORE: BENDER, P.J.E., LAZARUS, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED: JANUARY 4, 2019**

Appellant, S.L.D. (a minor), appeals from the dispositional order entered on April 9, 2018, following his adjudication of delinquency for the offenses of robbery and criminal conspiracy to commit theft. Appellant solely challenges the sufficiency of the evidence to sustain his convictions. After careful review, we affirm.

Appellant was arrested and charged with the above-stated offenses, as well as harassment, in the case docketed at CP-67-JV-0000165-2018.[1] At an adjudicatory hearing on March 26, 2018, the Commonwealth presented evidence that Appellant and a cohort robbed Sean Meekins at gunpoint, stealing Meekins' phone. At the conclusion of the hearing, the court found Appellant guilty of robbery and conspiracy to commit theft, but not guilty of

---

[1] Appellant was also charged with (and ultimately found guilty of) possession of marijuana in the case docketed at CP-67-JV-0000233-2018. However, Appellant did not file a notice of appeal from the dispositional order entered in that case, and his present claims pertain only to the dispositional order case CP-67-JV-0000165-2018.

harassment. At the dispositional hearing held on April 9, 2018, Appellant was adjudicated delinquent and ordered to be placed in a residential treatment facility. Appellant filed a timely notice of appeal, and he also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellant presents one issue for our review:

> Whether [Appellant's] adjudication and disposition for robbery and conspiracy should be reversed where the evidence was insufficient to identify him as one of the robbers because the victim gave only a weak and tentative identification that was motivated by [Appellant's] appearance in a photograph and was not meaningfully corroborated.

Appellant's Brief at 4.

Preliminarily, we note that, "[t]he Juvenile Act grants broad discretion to juvenile courts, and we will not disturb the lower court's disposition absent a manifest abuse of discretion." *In Interest of N.C.*, 171 A.3d 275, 280 (Pa. Super. 2017) (citing *In re C.A.G.*, 89 A.3d 704, 709 (Pa. Super. 2014), and *In the Interest of J.D.*, 798 A.2d 210, 213 (Pa. Super. 2002)). Further,

> [i]n reviewing the sufficiency of the evidence to support the adjudication below, we recognize that the Due Process Clause of the United States Constitution requires proof beyond a reasonable doubt at the adjudication stage when a juvenile is charged with an act which would constitute a crime if committed by an adult. Additionally, we recognize that in reviewing the sufficiency of the evidence to support the adjudication of delinquency, just as in reviewing the sufficiency of the evidence to sustain a conviction, though we review the entire record, we must view the evidence in the light most favorable to the Commonwealth.

*In re A.D.,* 771 A.2d 45, 48 (Pa. Super. 2001) (internal citations and quotation marks omitted) (quoting *In re Johnson,* 284 A.2d 780, 781 (Pa. 1971)).

In the present case, Appellant contends that the evidence was insufficient to prove that he was one of the two individuals that robbed Meekins. Before addressing the specifics of Appellant's arguments, we summarize - in the light most favorable to the Commonwealth - the evidence presented at his adjudicatory hearing. There, Meekins was the first witness called by the Commonwealth. He testified that on January 18, 2018, he was walking to his car when he "noticed somebody walking up from [his] right." N.T. Hearing, 3/26/18, at 5, 6. Meekins explained that as the person got closer, he "realized that [he] had a gun." *Id.* at 6. Meekins also "felt somebody else behind [him]." *Id.* at 7. The person in front of Meekins pointed the gun - which Meekins described as "a black pistol" - at Meekins' waist and asked Meekins "what [he] got [*sic*]." *Id.* Meekins gave the man his wallet, which the man "looked through … to see if there was anything in there … he could use[,]" after which the man "tossed [the wallet] back to [Meekins]." *Id.* at 8. The man then asked Meekins for his phone, which was an Apple iPhone 7. *Id.* Meekins gave the man his phone and the passcode for the phone. *Id.*

Meekins testified that as the robbery was transpiring, he could tell that the man behind him "was holding a gun to [his] back." *Id.* at 9. When asked how he knew this, Meekins replied: "I looked behind me. I took a glance. I

saw a gun, looked up, and then turned back around and handed [the man in front] my phone." *Id.* Meekins testified that the man behind him was African-American, "significantly taller than the guy in the front[,]" and he was wearing ripped jeans and a black hooded sweatshirt with the hood up. *Id.* at 9, 10. Meekins explained that the man behind him was standing very close, and he had the gun touching Meekins' back. *Id.*

After taking Meekins' phone, the two men "ran off…." *Id.* Meekins then borrowed a phone from a friend and called the police, as well as his father, who told Meekins he would deactivate the stolen phone. *Id.* at 11, 20. Meekins testified that his father deactivated the phone "within an hour" after the robbery. *Id.*

Meekins testified that he received a new phone within 48 hours after the robbery. About a week and a half later, he was looking at his iCloud account when he noticed "a picture in there of two people" that Meekins had not taken.[2] *Id.* at 12, 15. Meekins testified that "the shorter" person in the photograph was "the person that was in front of [Meekins] when [he] got robbed, and the taller person in [the] picture look[ed] familiar, like he was the person in back of [Meekins]." *Id.* at 13. Meekins identified Appellant in court as the taller man in the photograph. *Id.* at 13-14. Meekins also identified

_____

[2] According to Apple Inc.'s website, iCloud is a program that is built into every Apple device and automatically stores data from the device, including photographs. *See* iCloud, https://www.apple.com/icloud/.

Appellant in court as the man who was standing behind him during the robbery. *Id.* at 14, 15. Specifically, Meekins testified:

> [The Commonwealth:] The person [Appellant] that you see in the courtroom today, have you ever seen him before?
>
> [Meekins:] Yes, sir.
>
> [The Commonwealth:] When did you see him?
>
> [Meekins:] When I was robbed.
>
> [The Commonwealth:] And which person was that?
>
> [Meekins:] The person behind me.
>
> …
>
> [The Commonwealth:] Who was the guy who was standing behind you with the gun in your back robbing you?
>
> [Meekins:] I don't know.
>
> [The Commonwealth:] Do you see that person in the courtroom?
>
> [Meekins:] Yes, sir.

*Id.* at 14-15.

The Commonwealth also called Officer Daniel Craven to the stand. Officer Craven testified that during the investigation of the robbery, Meekins showed him the photograph that Meekins had discovered on his iCloud account. *Id.* at 20. Meekins told Officer Craven that the two men in the photograph were the robbers. *Id.* Officer Craven testified that he identified the shorter man in the photograph as Kareem Williams and the taller individual as Appellant. *Id.* at 21. Officer Cravens also confirmed that there was "about a one-hour window [when the] phone still had access to the iCloud" during which the photograph must have been taken. *Id.* at 22. However, there was

"no identifying information embedded within the digital photo[,]" such as "a time or date stamp." *Id.* at 21, 22.

On appeal, Appellant maintains that this evidence was inadequate to prove his identity as one of the men who robbed Meekins. According to Appellant, "Meekins' identification was tentative and had more to do with the photo than [Meekins'] actual recollection of the robbery itself." Appellant's Brief at 15. Appellant also argues that, "there was little in the way of corroboration to shore up Meekins' shaky identification testimony." *Id.* at 14. Appellant points out that while Officer Craven testified that the photograph of Appellant found on Meekins' iCloud account must have been taken within an hour of the robbery, Officer Craven "was not qualified as an expert in this field" and no time or date stamp associated with the photograph was found. *Id.* Appellant also stresses that "none of the other evidence traditionally associated with a robbery was present[,]" as neither the phone nor the guns used in the robbery were "ever recovered or otherwise associated with [Appellant]." *Id.* In sum, Appellant insists that "the evidence was insufficient to prove [he] was one of the people who robbed Meekins" because "[t]he identification testimony was weak and tentative, and there was insufficient corroboration to establish proof beyond a reasonable doubt." *Id.* at 16.

Appellant's argument is unconvincing. Initially, we disagree with Appellant that Meekins' identification was 'weak and tentative.' To the contrary, Meekins unequivocally identified Appellant in-court as the man who was standing behind him during the robbery. *See* N.T. Hearing at 14, 14-15.

Meekins also provided an out-of-court identification of Appellant to Officer Craven based on the photograph of Appellant in Meekins' iCloud account. That photograph demonstrated that Appellant and Kareem Williams were together, and in possession of Meekins' stolen phone, during the hour after the robbery. This evidence was sufficient to prove that Appellant was one of the two individuals who robbed Meekins.

While Appellant contends that the court should not have credited Meekins' in-court identification because it was premised on Meekins' observing Appellant in the photograph, rather than on his actual recollection of the robbery, this argument attacks the weight of the evidence, not its sufficiency. *See Commonwealth v. Lewis*, 911 A.2d 558, 566 (Pa. Super. 2006) (concluding that a claim that witnesses are not credible is an argument challenging the weight of the evidence); *Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011) ("Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.") (citations and quotation marks omitted). The same is true for Appellant's argument that the court should have disregarded Officer Craven's unobjected-to testimony that the photograph was taken within one hour of the robbery, as the officer was not admitted as an expert witness. An appellate court will not review a sufficiency claim where the argument in support thereof goes to the weight, not the sufficiency, of the evidence. *See Commonwealth v. Sherwood*, 982 A.2d 483, 492 (Pa. 2009) (citing

*Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999); *Commonwealth*

*v. Mack*, 850 A.2d 690, 693 (Pa. Super. 2004)).[3]

      Dispositional order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>01/04/2019</u>

---

[3] Moreover, Appellant did not preserve any weight-of-the-evidence claim in his Rule 1925(b) statement, thus waiving it for our review. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").