J-A16039-17

2017 PA Super 299

IN THE INTEREST OF: N.C., A MINOR    :    IN THE SUPERIOR COURT OF
                        :          PENNSYLVANIA
                        :
                        :
APPEAL OF: N.C.              :    No. 1634 WDA 2016

Appeal from the Dispositional Order September 7, 2016
in the Court of Common Pleas of Clearfield County
Juvenile Division at No(s): CP-17-JV-0000071-2012
CP-17-JV-0000036-2016

BEFORE:    STABILE, J., FORD ELLIOTT, P.J.E., and STRASSBURGER,* J.

OPINION BY STRASSBURGER, J.:        **FILED SEPTEMBER 18, 2017**

N.C. (Appellant) appeals from the dispositional order[1] entered on

September 7, 2016, following his adjudication of delinquency for indecent

assault person less than 13 years of age, 18 Pa.C.S. § 3126 (indecent

---

[1]    Appellant purports to appeal from the September 26, 2016 order denying his post-dispositional motion.  However, "[i]n juvenile proceedings, the final order from which a direct appeal may be taken is the order of disposition, entered after the juvenile is adjudicated delinquent." ***Commonwealth v. S.F.***, 912 A.2d 887, 889 (Pa. Super. 2006) (unnecessary capitalization omitted).  We have amended the caption accordingly.

Also, although the caption of the September 26, 2016 order indicates that the case is docketed in the criminal division of the Court of Common Pleas of Clearfield County, the August 18, 2016 adjudicatory/dispositional order indicates the case is docketed in the juvenile division.  We have amended the caption accordingly.

Finally, the August 18, 2016 adjudicatory/dispositional order is docketed at docket number CP-17-JV-0000036-2016, which was later consolidated with docket number CP-17-JV-0000071-2012.  We have amended the caption to add docket number 36-2016.

*Retired Senior Judge assigned to the Superior Court.

assault). We vacate the dispositional order and reverse the adjudication of delinquency.

In February 2012, a petition was filed alleging that then 14-year-old Appellant was a delinquent child because Appellant touched a three-year-old in the genital area, which constituted aggravated indecent assault (a felony) and indecent assault (a misdemeanor). Deliquency Petition, 2/21/2012, at 1-2. In May 2012, after a contested hearing, the juvenile court in Jefferson County determined that Appellant had engaged in a delinquent act constituting aggravated indecent assault. Order, 5/11/2012. Because Appellant resided in Clearfield County, the case was transferred to the juvenile court in Clearfield County for adjudication and disposition. *Id.* In July 2012, the juvenile court in Clearfield County adjudicated Appellant delinquent of one count of aggravated indecent assault, and ordered Appellant to be placed on probation for one year, which was to run consecutively to a probation violation disposition imposed in a separate matter. Order, 7/19/2012.

Appellant appealed the disposition to this Court, arguing that the juvenile court erred by admitting recorded statements by the child-victim into evidence during the adjudicatory hearing. This Court agreed, holding that admission of the statements violated Appellant's right to confrontation provided by the Sixth Amendment to the United States Constitution. *In re N.C.*, 74 A.3d 271 (Pa. Super. 2013). We vacated Appellant's disposition

and remanded for a new adjudication, and our holding was later affirmed on appeal. *In re N.C.*, 103 A.3d 1199 (Pa. 2014).

As part of the disposition of Appellant's probation violation, which related to Appellant's engaging in harassment by communication stemming from "sexting" girls at his school, the juvenile court placed Appellant at Appalachian Youth Services (AYS) in July 2012.[2] Juvenile Court Opinion, 11/28/2016, at 1. While his appeal was pending, Appellant received sexual offender treatment at AYS. *Id.* After Appellant was discharged from AYS to the care of his mother, the juvenile court ordered Appellant to attend the sexual offender program at Project Point of Light, which he completed on July 9, 2014. *Id.* at 1-2. Thus, by the time the case was remanded, Appellant had successfully completed two court-ordered sexual offender treatment programs. He also completed his term of probation without incident, graduated from high school, and was a rising university freshman. N.T., 6/18/2016, at 4, 9.

After remand, Appellant, then age 18, tendered an admission to indecent assault, and the juvenile court in Jefferson County accepted his admission and transferred the case to the juvenile court in Clearfield County for adjudication and disposition. Adjudicatory Hearing Order, 2/24/2016, at

---

[2] There is a typographical error in the juvenile court's opinion; Appellant's probation revocation and placement at AYS occurred in July 2012, not 2013. *See* Exhibit A to Appellant's Omnibus Pre-trial Motion (attaching revocation of probation order dated July 13, 2012).

1.   After conducting a hearing on August 18, 2016, the juvenile court determined that Appellant was in need of treatment, supervision, or rehabilitation, and adjudicated Appellant delinquent of indecent assault. Adjudicatory/Dispositional Hearing Order, 9/7/2016, at 1-2.  The juvenile court rendered its disposition at the same time, placing Appellant on probation for one year less one day and ordering Appellant to complete a psychosexual evaluation at Project Point of Light, to pay court costs, and to have no contact with the victim.  *Id.* at 2.

After filing a post-dispositional motion, which the juvenile court denied, Appellant timely filed a notice of appeal.  Both Appellant and the juvenile court complied with Pa.R.A.P. 1925.  On appeal, Appellant asks this Court to decide whether the juvenile court abused its discretion in adjudicating Appellant delinquent, arguing there was a lack of evidentiary support to sustain the finding that Appellant was in need of treatment, supervision, or rehabilitation.  Appellant's Brief at 5.  Appellant also questions whether the juvenile court subjected Appellant to unconstitutional punishment in violation of the double jeopardy and due process clauses of the United States and Pennsylvania Constitutions by imposing additional and extended punishment upon him.  *Id.*

Before we begin our analysis of Appellant's first issue, we must consider whether it is moot.  At oral argument, counsel for Appellant informed the Court that Appellant underwent his court-ordered psychosexual

evaluation and was due to be released from probation in August 2017. Nevertheless, Appellant argued that his first issue is not moot because he is contesting his adjudication, not his disposition, and if this Court should rule that the juvenile court erred by finding him to be in need of treatment, the Court is able to enter an order that has legal effect because the appropriate remedy would be to reverse the adjudication order.

We consider the following in determining whether a case is moot.

> As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. … An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

*In re R.D.*, 44 A.3d 657, 679-80 (Pa. Super. 2012) (citations omitted).

We agree with Appellant that his first issue is not moot for the reasons he articulated. *See In Interest of Kilianek*, 378 A.2d 995, 995 (Pa. Super. 1977) (holding that juvenile's challenge to her adjudication, which claimed that juvenile court improperly adjudicated her delinquent despite not meeting the legal standard for delinquency, was not rendered moot upon her release from out-of-home placement); *In Interest of DelSignore*, 375 A.2d 803, 807 (Pa. Super. 1977) (deciding juvenile's challenge regarding sufficiency of evidence to support adjudication, but holding objection to placement was rendered moot upon her release from the placement); *R.D.*, 44 A.3d at 679-80 (deciding issues relating to adjudication, but holding that

juvenile's challenge to his disposition was rendered moot upon his release from the delinquency placement).

Therefore, we turn our attention to our standard of review of dispositional orders following delinquency adjudications in juvenile proceedings. The Juvenile Act grants broad discretion to juvenile courts, and we will not disturb the lower court's disposition absent a manifest abuse of discretion. *In re C.A.G.,* 89 A.3d 704, 709 (Pa. Super. 2014); *In the Interest of J.D.,* 798 A.2d 210, 213 (Pa. Super. 2002).

Before entering an adjudication of delinquency, "the Juvenile Act requires a juvenile court to find that a child has committed a delinquent act *and* that the child is in need of treatment, supervision, or rehabilitation." *Commonwealth v. M.W.*, 39 A.3d 958, 964 (Pa. 2012) (emphasis in original). "A determination that a child has committed a delinquent act does not, on its own, warrant an adjudication of delinquency." *Id.* at 966. *See also In re T.L.B.*, 127 A.3d 813 (Pa. Super. 2015) (holding that the juvenile court did not abuse its discretion in finding the appellee was not in need of treatment, rehabilitation, or supervision when, by the time of the deferred adjudication hearing, appellee completed the sexual offender portion of his psychological treatment ordered as part of his dependency matter and had not acted out in sexualized behavior in more than a year).

The Juvenile Act and Rules of Juvenile Procedure contemplate the following process. Once the juvenile court determines the Commonwealth

has proved beyond a reasonable doubt that the child committed the acts alleged, the court must enter that finding on the record. *Id.* at 965 (citing 42 Pa.C.S. § 6341(b)). If the juvenile court makes such a finding, next, either immediately or at a hearing held within 20 days, the court must "**hear evidence** as to whether the child is in need of treatment, supervision[,] or rehabilitation."[3] *Id.* (emphasis added). "If the court finds that the child is not in need of treatment, supervision[,] or rehabilitation[,] it shall dismiss the proceeding and discharge the child from any detention or other restriction theretofore ordered." *Id.* *See also* Pa.R.J.C.P. 409(1). "If the court determines the juvenile is in need of treatment, supervision, or rehabilitation, the court shall enter an order adjudicating the juvenile delinquent and proceed in determining a proper disposition under Rule 512." Pa.R.J.C.P. 409(2)(a).

Our first task is to determine the burden of proof, as the parties dispute which side bears the burden and what the burden is. Appellant argues that the Commonwealth had the burden of proving beyond a reasonable doubt both required prongs for adjudication, *i.e.*, that Appellant committed a delinquent act and was in need of treatment, supervision, or

---

[3] The Juvenile Act further specifies that "[i]n the absence of evidence to the contrary, evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment, supervision[,] or rehabilitation." 42 Pa.C.S. § 6341(b). This provision does not apply to Appellant because the felonies charged in this case were *nolle prossed* at the time Appellant tendered his admission to the misdemeanor of indecent assault.

rehabilitation. Appellant's Brief at 13. The Commonwealth disagrees, arguing that the Juvenile Act only requires proof beyond a reasonable doubt for the first adjudicatory prong regarding the commission of a delinquent act. Commonwealth's Brief at 9-12. The Commonwealth does not indicate what level of proof is required to prove that a juvenile is in need of treatment, supervision, or rehabilitation. Nor does it argue directly which party had the burden, although it seems to suggest implicitly that Appellant did when it argues that the juvenile court was justified in finding that Appellant was in need of further treatment due to the lack of evidence in the record demonstrating that Appellant's prior treatment focused on his later-admitted delinquent act. *Id.* at 15.

Our Supreme Court has noted that "the Juvenile Act is not a model of clarity." *M.W.*, 39 A.3d at 964. Indeed, the Juvenile Act does not specify explicitly who has the burden of demonstrating that the juvenile is or is not in need of treatment, supervision, or rehabilitation. However, in this case, the Commonwealth is the petitioner, and filed a petition alleging that Appellant is a "delinquent child" as defined in the Juvenile Act. Petition, 2/21/2012, at 1. The Juvenile Act defines a delinquent child as "[a] child ten years of age or older whom the court has found to have committed a delinquent act and is in need of treatment, supervision[,] or rehabilitation." 42 Pa.C.S. § 6302. Therefore, it stands to reason that the Commonwealth has the burden of proving both prongs.

While as a matter of strategy, a juvenile certainly may attempt to rebut the Commonwealth's allegation that he or she is in need of treatment, supervision, or rehabilitation, nothing in the Juvenile Act or in cases construing the act suggests that a juvenile carries the burden of disproving that he or she is in need of treatment, supervision, or rehabilitation. Therefore, the burden remained with the Commonwealth to prove that Appellant was in need of treatment, supervision, or rehabilitation.

Having settled that it is the Commonwealth that had the burden of proof, we observe that the Act is silent as to the standard of proof required for establishing that the juvenile is in need of treatment, supervision, or rehabilitation. *Id.* (stating merely that the juvenile court must "hear evidence" as to the need for treatment, supervision, or rehabilitation). This is in contrast to the Act's mandate regarding the juvenile's commission of a delinquent act. *Id.* ("If the court finds on proof beyond a reasonable doubt that the child committed the acts by reason of which he is alleged to be delinquent it shall enter such finding on the record….").

Both parties exclusively cite to *M.W.* to support their respective positions, but other than restating the statutory language, our Supreme Court in *M.W.* did not address the standard of proof required by the Juvenile Act. *See M.W.*, 39 A.3d at 965. The United States Supreme Court has addressed the standard of proof required in the adjudicatory phase of juvenile delinquency proceedings, holding that "the Due Process Clause

protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he [or she] is charged," and then extending this holding to the adjudicatory phase of a juvenile delinquency proceeding. *In re Winship*, 397 U.S. 358, 364 (1970). However, this holding is not dispositive of what standard of proof is required to prove that a juvenile is in need of treatment, supervision, or rehabilitation, as the statute at issue in *Winship* did not have a two-pronged approach to adjudication and only required the state of New York to prove that the juvenile committed a delinquent act. *Id.* ("Section 712 of the New York Family Court Act defines a juvenile delinquent as 'a person over seven and less than sixteen years of age who does any act which, if done by an adult, would constitute a crime.'").

Our Supreme Court recently observed that "the standard of proof serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Commonwealth v. Batts*, 163 A.3d 410, 453 (Pa. 2017) (citing *Addington v. Texas*, 441 U.S. 418, 423 (1979)). "The function of a standard of proof … is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *Id.* (citations omitted). Proof beyond a reasonable doubt "impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts at issue" and is normally reserved for criminal matters

- 10 -

where a person's right to liberty is at stake. *Id.* at 453-54 (citing *Winship*, 397 U.S. at 364). "The stringency of the beyond a reasonable doubt standard bespeaks the weight and gravity of the private interest affected, society's interest in avoiding erroneous convictions, and a judgment that those interests together require that society impose almost the entire risk of error upon itself." *Id.* (citations and quotation marks omitted).

To determine the interests at stake, we turn to the purpose of the Juvenile Act for assistance. "Consistent with the protection of the public interest," the purpose of the Act is "to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community." 42 Pa.C.S. § 6301. Once a child is adjudicated delinquent, "[t]he Juvenile Act gives wide latitude to the juvenile court in fashioning an order of disposition" to achieve these objectives. *Commonwealth v. B.H.*, 138 A.3d 15, 21 (Pa. Super. 2016); *T.L.B.*, 127 A.3d at 818.

Our legislature could have opted to provide that a child may be adjudicated delinquent when the Commonwealth proves that the child committed a delinquent act, thereby invoking the juvenile court's broad dispositional powers to protect the public interest, hold the child

accountable, and assist the child in developing competencies to become a responsible and productive member of society.  It did not.  Instead, the legislature determined that before the juvenile court may use its dispositional powers, the Commonwealth must also prove that the child is in need of treatment, supervision, or rehabilitation.  42 Pa.C.S. § 6341(b); **M.W.**, 39 A.3d at 966.  This two-pronged approach suggests that the legislature intended to limit the instances when the state steps in to govern a juvenile's behavior and label the juvenile as a delinquent child.  There may be some instances where a juvenile's delinquent behavior is better addressed by the authority of a parent, guardian, or school as opposed to the coercive authority of a juvenile court judge who does not otherwise know the juvenile.  Once a child is adjudicated delinquent, the juvenile court may "place the child 'on probation under supervision of the probation officer of the court … under conditions and limitations the court prescribes,' … commit the child to an institution or other facility for delinquent children, or … order payment of fines, costs, fees and restitution."  **B.H.** (quoting 42 Pa.C.S. § 6352).  Thus, involvement with the juvenile delinquency system has significant consequences for a juvenile, including the potential loss of liberty.  Because the legislature opted to subject a juvenile to those consequences only if he or she is in of need treatment, supervision, or rehabilitation, we hold that in addition to proving beyond a reasonable doubt that a juvenile engaged in a delinquent act, the Commonwealth also must prove beyond a

reasonable doubt that the juvenile is in need of treatment, supervision, or rehabilitation.[4]

We turn to the substance of Appellant's argument. Appellant points out that he already successfully completed a commitment to AYS, sexual offender treatment at Project Point of Light, and a term of juvenile probation supervision, all of which was undertaken to address the felony crime of aggravated indecent assault. Appellant's Brief at 14. Appellant argues that the juvenile court impermissibly relied upon argument from the district attorney, which does not constitute evidence, and there is insufficient evidence otherwise to support the juvenile court's order. *Id.* at 14-15.

In its Rule 1925(a) opinion, the juvenile court explained that it was persuaded that Appellant needed further treatment because there was no evidence from AYS or Project Point of Light demonstrating that Appellant had admitted to engaging in any form of indecent assault prior to or during his treatment. Juvenile Court Opinion, 11/28/2016, at 4. The juvenile court opined that Appellant's failure to admit wrongdoing indicated that Appellant's rehabilitative needs were not met through his prior treatment. *Id.* The juvenile court stated that it may consider the protection of the public interest, and concluded that further treatment will not only serve Appellant's

---

[4] Even if the Juvenile Act required a less stringent standard of proof, based upon the lack of evidentiary support that we discuss *infra*, we would still determine that the Commonwealth failed to meet its burden.

- 13 -

rehabilitative needs but also protect the public by having Appellant address behaviors that are "a possible danger to society."[5] *Id.* at 5-6.

We agree with Appellant that the juvenile court's findings and conclusions are not supported by the record. A review of the transcript reveals that the adjudication and disposition hearing consisted primarily of argument by counsel from both sides,[6] and the Commonwealth did not seek to introduce evidence on its own accord. The juvenile court *sua sponte* and without objection entered documents it had received from the Project Point of Light into the record, including, *inter alia*, a polygraph examination dated February 9, 2012, indicating that Appellant denied the allegations against

---

[5] In *T.L.B.*, this Court acknowledged that the Juvenile Act requires the juvenile court to consider the protection of the public, and to devise a sentence best suited to the child's treatment, supervision, rehabilitation, and welfare, under the individual circumstances of each case. *T.L.B.*, 127 A.3d at 818. Nevertheless, this Court held that protection of the public may not be considered until the dispositional phase **after** the court has adjudicated the juvenile delinquent, as "*M.W.* clearly delineated only two factors for the initial finding of delinquency: the juvenile's commission of the acts and his need for treatment, supervision, or rehabilitation." *Id.* (citing *M.W.*, 39 A.3d at 959, 964). However, Appellant did not raise this argument, and therefore, he has waived any challenge to the juvenile court's error.

[6] The hearing began with argument from the parties regarding a defense motion. N.T., 8/18/2016, at 3. Although the motion is not identified in the record, presumably the court was referring to Appellant's pre-adjudication omnibus motion, which requested, *inter alia*, that the juvenile court dismiss the delinquency petition based upon Appellant's prior successful completion of sexual offender treatment, out-of-home placement, and probation. Omnibus Motion for Relief, 11/25/2015, at ¶¶ 4-13. Appellant originally presented the motion to the juvenile court in Jefferson County, which ruled that the motion was not ripe and deferred a ruling on the merits for the juvenile court in Clearfield County to address if necessary. Order, 12/4/2015, at 1.

him, progress reports from Appellant's sexual offender treatment from July 2013 to July 2014, a polygraph examination dated June 17, 2014, indicating the examiner did not discuss the allegations regarding the victim with Appellant due to Appellant's pending appeal, and a letter indicating Appellant successfully completed the treatment program as of July 9, 2014. N.T., 8/28/2016, at 12; Court Exhibit 1. The progress reports, issued on a quarterly basis, were brief. Project Point of Light rated Appellant's group attendance and participation as excellent (except for one report in which he received a satisfactory rating) and noted occasional concerns. For example, the January 2014 report noted he was making slow progress, but did not offer any further detail. None of the listed concerns discussed whether he continued to deny the allegations throughout his therapy or the impact that the lack of an admission might have had upon his therapy. Court Exhibit 1 at 9-14 (unnumbered).

The only testimony[7] offered during the hearing was from Appellant's probation officer and the chief juvenile probation officer. Appellant's

---

[7] The notes of testimony from the hearing do not indicate whether the oath to testify truthfully was administered to Appellant's probation officer and the chief juvenile probation officer prior to their statements on the record. Although we are cognizant that the Juvenile Act permits judicial hearings to proceed in an informal fashion, this Court recognized long ago that *In re Gault*, 387 U.S. 1 (1967) mandates that witnesses at juvenile delinquency hearings be sworn in so that the "juvenile may be confronted by witnesses subject to oath and penalties for perjury." *Commonwealth ex rel. Freeman v. Superintendent of State Corr. Inst. at Camp Hill*, 242 A.2d 903, 908 (Pa. Super. 1968). "Without an administration of an oath to a

probation officer agreed in response to a question from Appellant's counsel that Appellant was a "model probationee" during his supervision of Appellant. N.T., 8/18/2016, at 9. Later during the hearing, the juvenile court inquired whether the Commonwealth or the probation office had any reports indicating whether Appellant admitted to engaging in impropriety during his treatment. The chief juvenile probation officer responded that, to her knowledge, Appellant did not admit anything during his treatment, but qualified her answer by stating that his actual probation officer was more up to date on the case than she was because he received a lot of the reports. N.T., 8/18/2016, at 10. Nevertheless, no one asked Appellant's probation officer to provide testimony on the issue. The court also asked why the probation office was recommending that Appellant undergo another psychosexual evaluation since he had received one in the past. The chief probation officer responded as follows:

> [t]he psychosexual [evaluation] is going to determine any level of risk. They will do an Abel [Assessment for Sexual Interest], they do a psychological [evaluation]. He had this done before. It's just to determine is he [a] risk right now, does he need any further treatment now that he's admitting as opposed to when he wasn't admitting. It's just erring on safety at this point in time. And, you know, I'm really interested in seeing what

---

witness, the taking of testimony is meaningless." ***Id.*** In fact, we have held that "[t]he lack of an oath means that there was no testimony." ***Tecce v. Hally***, 106 A.3d 728, 731 (Pa. Super. 2014). Without testimony, there is "no record evidence upon which the trial court could support its order." ***Id.*** Nevertheless, to the extent that the oath was not administered, Appellant neither objected at the hearing nor raised this issue on appeal, and therefore this issue is waived. ***Id.*** at 732.

> Project Point of Light has to say. If they believe he needs no more further treatment, he needs no more further treatment. It's just a tool to give us as to how to better supervise him for the next year, if that's how long he stays.

N.T., 8/18/2016, at 11-12.

As noted *supra*, the Juvenile Act requires the juvenile court to hear evidence as to whether the juvenile is in need of treatment, supervision, or rehabilitation, and then make a finding based on that evidence. The Commonwealth failed to meet its burden in introducing such evidence, and nothing in the record supports the juvenile court's finding that Appellant is in need of treatment, supervision, or rehabilitation. Significantly, while the chief probation officer noted her qualified belief that Appellant had never admitted to wrongdoing during his prior treatment, she also acknowledged that she wanted Appellant to undergo the psychosexual evaluation because she **did not know** whether Appellant was in need of further treatment. Thus, her statement cannot support the finding that Appellant is actually in need of further treatment.

According to the juvenile court, "[Appellant's] records clearly show that his initial treatment did not address his admission and that his admission to the indecent assault offense would have been crucial to effective treatment." *Id.* at 5. Because the juvenile court fails to cite to the record in its Rule 1925(a) opinion, we can only speculate to which records the court is referring. The only records introduced at the hearing were the

records from Project Point of Light. As the juvenile court even acknowledges in its Rule 1925(a) opinion, the documentation from Project Point of Light does not "make any mention of therapy that addressed [Appellant's] offenses." *Id.* Therefore, the quality and effectiveness of Appellant's therapy at Project Point of Light as to this issue are unknown. While the early records indicate that Appellant denied touching the victim's vagina, the later records do not indicate whether Appellant subsequently took responsibility. Moreover, nothing in the Project Point of Light records supports the juvenile court's finding that Appellant's admission to the indecent assault offense was crucial to effective treatment.

The juvenile court's opinion also refers to Appellant's initial residential treatment at AYS, stating Appellant's failure to admit to indecent assault "severely impeded the progress of his treatment" because "acceptance of responsibility and offense disclosure are criteria to determine progress in sexual offender treatment." Juvenile Court Opinion, 11/28/2016, at 4. Although we were unable to locate documentation or testimony from AYS anywhere in the certified record, we presume that the juvenile court is relying upon a document entitled "AYS Ross' House Report of Progress/Court Summary Individual Service Plan" addressing Appellant's sexual offender treatment during the period between July 13, 2012 and September 10,

2012.[8] We recognize that the juvenile court may have had knowledge of this document from Appellant's delinquency proceedings prior to his first appeal. However, that disposition was vacated, and this document was not admitted or even mentioned during the August 18, 2016 adjudicatory hearing. Without notice of its use, Appellant had no opportunity to object to its consideration or to cross-examine its author. "[A] trial court may not consider facts or evidence *dehors* the record in making its determination." *Eck v. Eck*, 475 A.2d 825, 827 (Pa. Super. 1984). *See also Commonwealth v. McNeal*, 120 A.3d 313, 328 (Pa. Super. 2015) (vacating judgment of sentence because the trial court "convicted McNeal of a crime with evidence that the Commonwealth never introduced at trial. This

---

[8] The Commonwealth appended a copy of this report to its brief as part of its supplemental reproduced record. Appellant filed a motion to strike this document from the appellate record, as well as portions of the Commonwealth's brief referencing the document, based upon Appellant's contention that the document is not part of the certified record in this case. Motion to Strike, 4/13/2017, at ¶7. In its response to Appellant's motion to strike, the Commonwealth avers that the AYS report was made part of the record in the juvenile court based upon the juvenile court's reliance on the document in its Rule 1925(a) opinion. It also contends Appellant was aware of the document due to the Commonwealth's attaching it to its letter brief to the juvenile court in response to Appellant's pre-adjudication and disposition hearing memorandum, as well as the document's use in an unspecified review of placement proceeding (which presumably occurred before the prior adjudication was vacated, as Appellant was not in placement after remand). Commonwealth's Response to Motion to Strike, 4/28/2017, at ¶ 7. The Commonwealth provides no citations to the record, and based upon our review, these documents do not appear in the certified record. However, based upon our resolution of this issue, we deny Appellant's motion to strike as moot.

was patent error.") If the evidence does not appear of record, we may not give evidence cited in a brief or in the opinion of the lower court any effect on appeal. **Commonwealth v. Reno**, 449 A.2d 630, 632 (Pa. Super. 1982). Thus, the juvenile court erred by considering the AYS report, and the AYS report cannot support its finding that Appellant needed treatment.[9]

It is clear from the juvenile court's opinion that it impermissibly shifted the burden regarding whether Appellant was in need of treatment, supervision, or rehabilitation to Appellant. In its opinion, the court stated "at no point in the pre-adjudication and disposition hearing memorandum did [Appellant] aver that he either admitted or received treatment focused on his delinquent acts in this case." **Id.** at 5 (unnecessary capitalization omitted). Moreover, despite the lack of relevant documentation and the Commonwealth's failure to call any of Appellant's former service providers or other relevant witnesses, the juvenile court concluded the absence of evidence was affirmative proof that Appellant needed treatment, when in reality all it demonstrates is that the Commonwealth failed to meet its burden. The juvenile court opined that the lack of evidence suggested that

---

[9] Even assuming *arguendo* that it was proper for the juvenile court to have relied upon this document in adjudicating Appellant delinquent, it does not support the court's finding that Appellant was still in need of further treatment in August 2016. While Appellant's treatment faced obstacles back in mid-2012, this document does not address whether Appellant continued to deny any wrongdoing or whether Appellant made progress in treatment at AYS after the document's submission or later in treatment at Project Point of Light.

- 20 -

Appellant's former treatment was ineffective now that he admitted to engaging in indecent assault. This may be the case. But it is also entirely possible that Appellant's former treatment is what caused Appellant to accept responsibility for his actions at age 18 during the current proceedings. Either way, it is the Commonwealth's burden to provide evidence proving that Appellant needed treatment, supervision, or rehabilitation at the time of the adjudicatory hearing, and the Commonwealth failed to do so.

Due to its statutory mandate to make a finding based upon evidence proving that Appellant is in need of treatment, the juvenile court abused its discretion by basing its finding upon its own opinion or speculation. The juvenile court had tools at its disposal to assist the court in determining whether Appellant needed further treatment prior to adjudicating Appellant delinquent.[10] Having elected not to use those tools, the juvenile court was

---

[10] Because Appellant admitted to engaging in a delinquent act, "prior to the hearing on need for treatment," the juvenile court could have directed that a "social study and report in writing to the court be made by an officer of the court or other person designated by the court, concerning the child, his family, his environment, and other matters relevant to disposition of the case." 42 Pa.C.S. § 6339(a). It also could have ordered Appellant to undergo a psychosexual evaluation prior to adjudication. 42 Pa. C.S. § 6339(b). ("During the pendency of any proceeding the court may order the child to be examined at a suitable place by a physician or psychologist…."). The Juvenile Act also permits a juvenile court, "on its motion or that of a party," to "continue the [adjudicatory hearing] for a reasonable period, within the time limitations imposed by this section, to receive reports and other evidence bearing on the disposition or the need for treatment, supervision[,] or rehabilitation." 42 Pa.C.S. § 6341(e).

limited to basing its decision upon the evidence presented at the adjudicatory hearing.

Based on the foregoing, we hold that the juvenile court abused its discretion in finding that Appellant was in need of treatment because this finding is not supported by the record. Therefore, we vacate the juvenile court's dispositional order and reverse the adjudication of delinquency.[11]

Dispositional order vacated. Adjudication of delinquency reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/18/2017

---

[11] Because we grant Appellant the requested relief based upon his first question, we need not consider his double jeopardy and due process challenge.