J-S49030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF C.S.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: C.S.S. | No. 1799 MDA 2017 |

Appeal from the Order Entered October 23, 2017
In the Court of Common Pleas of Cumberland County
Criminal Division at No: CP-21-JV-0000321-2016

BEFORE:  SHOGAN, J., STABILE, J., and STEVENS, P.J.E.*

MEMORANDUM BY STABILE, J.:                **FILED JANUARY 25, 2019**

Appellant, C.S.S., appeals from an order of disposition following an adjudication that Appellant, when he was twelve years old, committed a single count of involuntary deviate sexual intercourse ("IDSI")[1] against a child.  The juvenile court adjudicated Appellant delinquent, found him to be in need of treatment, supervision, and rehabilitation, and placed him on probation with conditions that did not remove him from his family or the community.  Although the evidence demonstrates that Appellant committed a delinquent act, the Commonwealth failed to demonstrate that he needs further treatment, supervision, or rehabilitation.  Therefore, we vacate the dispositional order and reverse the adjudication of delinquency.

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3123.

The juvenile court accurately recounted the evidence adduced during a fact-finding hearing on August 14, 2017 as follows:

1. The then 8-year-old Victim testified.

2. Victim's mother had indicated for about two weeks that Victim had not been acting like herself, so Mother asked the child what was wrong.

3. Victim described a game called "try not to laugh" where Victim, [Appellant], a brother or sister, or all would watch videos online and the consequence for laughing at a video, based on the rules made by [Appellant], was that the person or persons who laughed "had to do something inappropriate."

4. Victim described inappropriate to mean the people would have to touch "privates" or kiss.

5. Victim went on to describe a game of choices, designated so by [Appellant], where when Victim made a choice, [Appellant] indicated the consequences of such choice was that she would have to "lay in the bed, put my feet over something and then he would put his penis into my butt."

6. When asked if it was "just maybe a little inside?" Victim responded "yeah" and further replied "it felt a little weird."

7. Victim described the placement act occurring for seconds.

8. On cross-examin[ation], Victim reiterated how the illusion of a choice occurred and stated "[Appellant] would stick his penis into my butt or touching it."

9. In the face of compound questions from counsel and well-timed but meritless objections from the Commonwealth, Victim never wavered, recanted, or changed her testimony.

Juvenile Court Opinion, 1/22/18, at 2-3 (footnotes omitted).  The court found

Appellant delinquent of IDSI, but dismissed three counts of indecent assault[2]

because the Commonwealth failed to prove that Appellant had contact with

the victim for the purpose of arousing sexual desire.

On October 23, 2017, the juvenile court held a dispositional hearing,

adjudicated Appellant delinquent, and placed him on supervision.  Appellant

filed a timely notice of appeal, and both Appellant and the juvenile court

complied with Pa.R.A.P. 1925.

Appellant raises two issues in this appeal:

1) With the lack of evidence on the record, did the juvenile court
manifestly abuse its discretion in adjudicating [C.S.S. delinquent
of] one count of [IDSI] at CP-21-JV-321-2016?

2) Did the juvenile court manifestly abuse its discretion by finding
that [C.S.S.] is in need of treatment, supervision, or rehabilitation
to treat [C.S.S.'s] sexual behavior despite the lack of any evidence
presented by the Commonwealth indicating as much?

Appellant's Brief at 5 (some capitalization omitted).

We begin by reviewing the relevant procedural framework.  To

adjudicate a juvenile delinquent, "a juvenile court must determine (1) that the

juvenile committed the delinquent acts alleged; **and** (2) that the juvenile is in

need of treatment, supervision, or rehabilitation, before it may enter an

adjudication of delinquency." ***Commonwealth v. M.W.***, 39 A.3d 958, 962

(Pa. 2012) (emphasis added).  The Commonwealth must prove both elements

---

[2] 18 Pa.C.S.A. § 3126.

- 3 -

beyond a reasonable doubt. *In Interest of N.C.*, 171 A.3d 275, 283 (Pa. Super. 2017). "A determination that a child has committed a delinquent act does not, on its own, warrant an adjudication of delinquency." *M.W.*, 39 A.3d at 966.

> This is so even where the delinquent act constitutes a felony because, while the commission of such an act presumptively supports a finding that the juvenile is in need of treatment and supervision (and thus can be adjudicated delinquent), the juvenile court must still make that finding after allowing for other evidence. 42 Pa.C.S.A. § 6341(b) ("In the absence of evidence to the contrary, evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment, supervision or rehabilitation.").

*Id.* at 966 n.9.

Once the juvenile court determines that the child committed the alleged act, it must hold a dispositional hearing in which it "hear[s] evidence as to whether the child is in need of treatment, supervision[,] or rehabilitation." *Id.* at 965. "If the court finds that the child is not in need of treatment, supervision[,] or rehabilitation[,] it shall dismiss the proceeding and discharge the child from any detention or other restriction theretofore ordered." *Id.*; *see also* Pa.R.J.C.P. 409(1). "If the court determines the juvenile is in need of treatment, supervision, or rehabilitation, the court shall enter an order adjudicating the juvenile delinquent and proceed in determining a proper disposition under Rule 512." Pa.R.J.C.P. 409(2)(a).

In his first argument, Appellant challenges the sufficiency of the evidence underlying the court's determination that he committed IDSI. When

examining a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, this Court employs a well-settled standard of review:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth. The finder of fact is free to believe some, all, or none of the evidence presented.

**Interest of J.G.**, 145 A.3d 1179, 1188 (Pa. Super. 2016).

The juvenile court observed:

> "A person commits [IDSI] with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3123(b). The act of sexual intercourse requires only "some penetration, however slight." 18 Pa.C.S.[A.] § 3101; **Commonwealth v. L.N.**, 787 A.2d 1064, 1070 (Pa. Super. 2001). Deviate sexual intercourse is defined, in relevant part, as "[s]exual intercourse per os or per anus between human beings[.]" 18 Pa.C.S.[A.] § 3101. It is clearly established that there is no requirement that penetration reach the vagina or

- 5 -

"farther reaches of the female genitalia. . . ." ***Commonwealth v Trimble***, 615 A.2d 48, 50 (Pa. Super. 1992).

The General Assembly did not define "intercourse per os or per anus." We construe non-technical words and phrases in statutes, which remain undefined, according to their ordinary usage. 18 Pa.C.S.[A.] § 105; 1 Pa.C.S.[A.] § 1903(a); ***Commonwealth v. Brachbill***, [] 555 A.2d 82, 86 ([Pa.] 1989). The plain meaning of "intercourse," as used in § 3101, is "physical sexual contact between individuals that involves the genitalia of at least one person [.]" Webster's Third New International Dictionary 1177 (unabridged 1986). "Per" has been defined as "by the means or agency of: by way of. THROUGH." ***Id.*** at 1674. Consequently, ordinarily the meaning of "per os or per anus" is through or by means of the mouth or posterior opening of the alimentary canal. Webster's at pp. 1595 (defining "os") and 97 (defining "anus"). Our courts have viewed the phrase "intercourse per os or per anus" as describing oral and anal sex. ***See generally Commonwealth v. Hitchcock***, [] 565 A.2d 1159 ([Pa.] 1989) (noting that definition of sexual intercourse encompasses forcible penetration of the three defined orifices of the body); ***Commonwealth v. Lee***, 638 A.2d 1006, *petition for allowance of appeal denied*, 647 A.2d 898 ([Pa.] 1994) (interpreting sexual intercourse and deviate sexual intercourse to include acts of oral anal sex).

***Commonwealth v. Kelley***, 801 A.2d 551, 555 (Pa. 2002).

Juvenile Court Opinion. at 4-5. The court continued:

The testimony of the eight year old child Victim that [Appellant] stuck his penis into her butt meets the statutory elements of IDSI with a child. [Appellant]'s penis is his genitalia and when placed inside the natal cleft, the bifurcation that appears between the two cheeks of the buttocks beginning at the bottom of the spine and ending below the anus, however slight, is deviate sexual intercourse per anus. There is no requirement that the penis penetrate the anus or reaches farther into the anal canal any more than it would have to penetrate a vagina or mouth. This is sufficient evidence that alone warranted the finding of [Appellant]'s commission of the criminal act of IDSI with a child.

- 6 -

Victim's testimony did not stand alone as there is additional evidence that further supports the finding of fact. Victim clearly has had therapeutic counseling as she did not exude shame, which may have been the cause of the behavior change noted by [Victim's] mother. This does not indicate her testimony was coached, for had she been coached it would have been easy to meet the prerequisite indecent assault elements for sexual arousal. Clearly there is probable cause for the indecent assault allegations based on the described general actions, but the fact of someone being sexually stimulated, while a reasonable belief to an adult, were not part of Victim's education or experience. This lack of knowledge incontrovertibly shows that Victim had not been coached and further bolsters her credibility. Mother's testimony, while not considered as proof of the facts she heard, provides a timeline for the incident and reveals the demonstrative signs of trauma suffered by Victim. These signs are further indicators of Victim's veracity, which when taken with how she presented herself and testified in court, in addition to her own words, are more than sufficient evidence of the commission of the offense.

*Id.* at 5-6.

We agree with this reasoning, and we conclude that the evidence was sufficient to prove that Appellant committed IDSI by penetrating Victim's anus with his penis. Thus, Appellant's first argument fails.

In his second argument, Appellant contends that the Commonwealth failed to present sufficient evidence that he is in need of treatment, supervision, or rehabilitation to address his sexual behavior. We agree with Appellant.

Notably, while the Commonwealth did not present any witnesses during Appellant's dispositional hearing, Appellant presented two expert witnesses. Dr. Daniel Morrow, a family therapist, testified that he treated Appellant for sexual behavior from August 2016 until March 2017. Notes of

Testimony ("N.T."), 10/23/17, at 28, 32. Appellant's treatment for sexual behavior ended in March 2017, and his treatment now addresses only his schoolwork and ADHD, areas in which he is improving. *Id.* at 32-33. A psychologist, Dr. Timothy Foley, testified that he performed Appellant's psychosexual evaluation and found him to be of low risk to sexually re-offend. *Id.* at 17. At the request of Appellant's probation officer (who did not testify), Dr. Foley evaluated whether Appellant needed further sexual treatment. *Id.* at 14. Dr. Foley issued an expert report stating that Appellant's risk to re-offend was low. He based this conclusion on three tests. The first test was the Hare PCLR test for adolescents tests for ingrained antisocial or psychopathic tendencies. On a scale from 0 to 40, with 0 being the lowest risk of psychopathic tendency and 40 the highest, Appellant scored 7, which is "quite low for juveniles on probation." *Id.* at 17. The second test, the Juvenile Sex Offender Assessment Protocol, "looks at various indices, including background, stabilities . . . other kinds of criminal behaviors, adjustments to the community and acceptance of responsibility." *Id.* On a range from 0 to 56, with 56 being the greatest risk of offending, Appellant scored 7. *Id.* The third test was the Protective + Risk Observations For Eliminating Sexual Offense Recidivism test, which reflected that Appellant "formed a therapeutic alliance" with Dr. Morrow and profited from therapy. *Id.* at 17-18.

Dr. Foley testified that Appellant admitted looking at pornography when he was nine years old, but Dr. Foley found "no indication of paraphilia disorder, a disorder of sexual appetite. There was no other acting out [or] antisocial kinds of behavior that were reported." *Id.* at 16. Finally, Appellant has not had any additional criminal incidents and has moved away from the victim and her family. *Id.* at 22.

The juvenile court abused its discretion under these circumstances by concluding that Appellant needs further treatment for his sexual offense. Our decisions in *N.C.* and *In Re T.L.B.*, 127 A.3d 813 (Pa. Super. 2015), provide guidance on this issue. The juvenile in *N.C.* committed aggravated indecent assault against a victim less than thirteen years old. At his disposition hearing, (1) the Commonwealth did not seek to introduce documentary evidence, (2) the juvenile's probation officer stated that he was a "model probationee," and (3) the chief probation officer wanted him to undergo psychosexual evaluation merely because she did not know whether he needed further treatment. *Id.*, 171 A.3d at 284-85. The court held that the juvenile needed further treatment. This Court vacated the disposition order and reversed the adjudication of delinquency, reasoning:

> It is clear from the juvenile court's opinion that it impermissibly shifted the burden regarding whether [the juvenile] was in need of treatment, supervision, or rehabilitation to [the juvenile]. In its opinion, the court stated "at no point in the pre-adjudication and disposition hearing memorandum did [the juvenile] aver that he either admitted or received treatment focused on his delinquent acts in this case." . . . Moreover, despite the lack of relevant documentation and the Commonwealth's failure to call

- 9 -

any of [the juvenile]'s former service providers or other relevant witnesses, the juvenile court concluded the absence of evidence was affirmative proof that [the juvenile] needed treatment, when in reality all it demonstrates is that the Commonwealth failed to meet its burden. The juvenile court opined that the lack of evidence suggested that [the juvenile]'s former treatment was ineffective now that he admitted to engaging in indecent assault. This may be the case. But it is also entirely possible that [the juvenile]'s former treatment is what caused [the juvenile] to accept responsibility for his actions at age 18 during the current proceedings. Either way, it is the Commonwealth's burden to provide evidence proving that [the juvenile] needed treatment, supervision, or rehabilitation at the time of the adjudicatory hearing, and the Commonwealth failed to do so.

*Id.* at 286-87. We held that "the juvenile court abused its discretion in finding that Appellant was in need of treatment because this finding is not supported by the record." *Id.* at 287.

In *T.L.B.*, a juvenile was charged with indecent assault, and his therapist was the sole witness at his dispositional hearing. The evidence showed that the juvenile had been in treatment for several months, had made progress in his treatment, had completed all treatment relevant to the delinquent act, and was expected to successfully complete treatment for mental health concerns unrelated to his sexual behavior. The juvenile court dismissed the juvenile complaint on the ground that he did not need treatment, supervision, or rehabilitation for his act of indecent assault. This Court affirmed on the basis of the juvenile court's "thorough discussion of the evidence." *Id.*, 127 A.3d at 819.

The evidence in the present case is at least as strong as, if not stronger than, the evidence presented in support of the juveniles in *N.C.* and *T.L.B.*

While the Commonwealth presented two witnesses in **N.C.**, it presented no evidence whatsoever in this case. Whereas the juvenile in **N.C.** did not present expert testimony, Appellant presented two experts, Dr. Foley and Dr. Morrow, who testified that Appellant was at a low risk to re-offend. Further, as in **T.L.B.**, Appellant successfully completed all treatment relating to his sexual offense, and his treatment now focuses on unrelated matters (his ADHD and schoolwork). In addition, he has had no additional criminal incidents and has moved away from the victim and her family. Because the Commonwealth failed to present any evidence, and because Appellant submitted substantial evidence that he presented a minimal risk of committing future sexual offenses, the Commonwealth failed to meet its burden of proving beyond a reasonable doubt that Appellant needs further treatment, supervision or rehabilitation to address his sexual behavior.

The juvenile court gave three reasons for its disposition: (1) Appellant's expert had not seen or heard the specific finding of fact of penetration made by the court and "seemed to make his own conclusions to suit his opinion," (2) Appellant's expert "ignored . . . acts of conditioning and indoctrination" that "are classic signs of predatory behavior, and if done by an adult would be denominated as grooming," and (3) Appellant's expert testimony that Appellant looked at pornography once at age nine "does not explain the sophistication shown in Juvenile's overall actions at and around the time of the incident." Juvenile Court Opinion at 6. The record does not support any

of these conclusions. Contrary to the juvenile court's first claim, Dr. Foley was aware that Appellant had committed IDSI against the victim. He testified that he met with Appellant following his IDSI adjudication to evaluate what level of sex offender treatment or supervision Appellant needed. N.T., 10/23/17, at 13-14. Second, the court failed to identify any evidence that Appellant's acts were those "of conditioning or indoctrination" that would constitute "grooming" if done by an adult. Dr. Foley did not make any such determination, and quite tellingly, the Commonwealth failed to introduce any evidence, including expert testimony, at all.[3] Third, the court's conclusion that Appellant showed "sophistication" in his "overall actions at and around the time of the incident" is both vague and unsupported by any evidence explaining **how** his single act of IDSI was "sophisticated," thus requiring treatment, supervision or rehabilitation.

Based on the foregoing, we hold that the juvenile court abused its discretion in finding Appellant was in need of treatment, rehabilitation, and supervision, because the record does not support this finding. Therefore, we

_____

[3] The Commonwealth certainly is familiar with presenting expert testimony to prove that individuals have dangerous sexual tendencies, yet it neglected to do so here. *See, e.g.*, *Commonwealth v. Meals*, 912 A.2d 213, 223-24 (Pa. 2006) (expert testimony presented by Commonwealth was key component in determination that defendant was sexually violent predator); *Commonwealth v. Woeber*, 174 A.3d 1096, 1106-07 (Pa. Super. 2017) (same).

vacate the juvenile court's dispositional order and reverse the adjudication of delinquency.

Dispositional order vacated. Adjudication of delinquency reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/25/2019