J-S75006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.S., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1579 EDA 2017 |

Appeal from the Order Entered April 20, 2017
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-JV-1000171-2014

BEFORE: PANELLA, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.: **FILED JULY 18, 2019**

J.S., a minor, appeals from the April 20, 2017, juvenile dispositional order entered in the Court of Common Pleas of Philadelphia County. After holding two hearings, the juvenile court adjudicated J.S. as delinquent and in need of treatment, supervision, and rehabilitation on April 6, 2017, because of several probation violations, including school issues, a positive marijuana test, and not taking his medication. J.S. argues the court erred in adjudicating him delinquent. We affirm.

The juvenile court summarized this case, in relevant parts, as follows:

[J.S.] was arrested on charges [stemming from an incident on a school bus] of Simple Assault, (M-2) 18 Pa.C.S § 2701(a)(1), Harassment, (M-3), 18 Pa.C.S. § 2709(a)(1), Disorderly Conduct (M-3), 18 Pa.C.S. § 5503(a)(1) and (a)(4) and Criminal Conspiracy, (M-2) 18 Pa.C.S. § 903(a)(1).

\* \* \*

On September 23, 2014, [J.S.] … admitted to the charges of Simple Assault, (M-2) 18 Pa.C.S. § 2701(a)(1), Harassment, (M-3), 18 Pa.C.S. § 2709(a)(1) and Criminal Conspiracy, (M-2) 18 Pa.C.S. § 903(a0(1). The other charges were dismissed. [The initial juvenile court] ordered [J.S.] to have no contact with the victims or the co-conspirator. Disposition was deferred and the case was transferred to Philadelphia County as [J.S.] was a resident of [that] county. The matter was then transferred to the Philadelphia Count Court of Common Pleas, Family Division and the Defender Association of Philadelphia was appointed to represent [J.S.].

On November 19, 2014, [J.S.] appeared before [the present juvenile court] and was placed on Interim Probation. It was ordered that he attend Anger Management training, be subject to random drug screens and attend school with no unexcused absences, lateness or suspensions. [The juvenile court] also ordered that [J.S.] continue with the therapy he was attending. The matter was continued until January 20, 2015, for a Dispositional Review Hearing. It was then continued until February 20, 2015.

On February 20, 2015, at Dispositional Review Hearing, [the juvenile court] was advised that [J.S.] was doing poorly and he had tested positive for drugs (benzodiazepines), had missed scheduled intake appointments for drug and alcohol treatment, had twelve (12) unexcused absences from school and had been suspended three (3) time[s] from school for threatening students and staff, using profane and obscene language, failing to follow classroom rules and possession of an incendiary device (lighter). [The juvenile court] also ordered a Behavioral Health Evaluation – Forthwith Psychiatric evaluation with evaluation for medication. The matter was continued until March 27, 2015.

On March 27, 2015, [the juvenile court] continued [J.S.]'s placement in secure detention at the Philadelphia Juvenile Justice Services Center.

On April 8, 2015, [the juvenile court] [c]ontinued Interim Probation and directed that [J.S.] be placed in a Residential Treatment Facility at George Jr. Republic – Residential Treatment Facility and continued the matter until April 27, 2015.

On April 27, 2015, [the juvenile court] was advised that [J.S.] was transferred on April 13, 2015. Adjudication was deferred and [the juvenile court] ordered [J.S.] to remain on Interim Probation. The matter was continued until July 1, 2015.

On July 1, 2015, [the juvenile court] ordered [J.S.] to remain in his current placement, deferred adjudication and continued interim probation. The matter was continued until September 1, 2015.

On that date, [the juvenile court] ordered that [J.S.] remain in his current placement, deferred adjudication and continued interim probation. The matter was continued until November 5, 2015.

On November 5, 2015, [the juvenile court] ordered that [J.S.] remain in his current placement, deferred adjudication and again continued interim [probation]. The matter was continued until January 6, 2016.

On January 6, 2016, [the juvenile court] ordered the same conditions and the matter was continued until March 7, 2016.

The same conditions remained in place and orders were given to that effect on March 7, 2016 and May 13, 2016. The matter was continued until June 6, 2016.

On June 6, 2016, [the juvenile court] ordered that [J.S.] be released from George Jr. Republic through a Private Residential Treatment Facility. [The juvenile court] directed [J.S.] to see a doctor and take all medication as prescribed. [The juvenile court] continued interim probation, directed that curfew be set by the probation officer and [J.S.]'s parent. Random drug screens were ordered and that [J.S.] was ordered to attend school with no unexcused absences, lateness or suspensions. The matter was continued until August 5, 2016.

On August 5, 2016, [the juvenile court] continued interim probation. The same orders regarding curfew hours, random drug screens and school were continued. The matter was continued until November 7, 2016.

On November 7, 2016, [the juvenile court] continued interim probation and directed that [J.S] be held for any further violations of any type. The matter was continued until December 12, 2016.

On December 12, 2016, the same order was placed and the matter was continued until January 19, 2017, when [the juvenile court] continued interim probation and the matter was continued until February 28, 2017.

On February 28, 2017, [the juvenile court] issued a bench warrant and directed that the Probation Officer plan for [J.S.]'s placement. A [b]ench warrant hearing was held on the same day where [the juvenile master] recommended that the bench warrant of February 28, 2017 be lifted, that [J.S.] be held in Secure Detention at the Philadelphia Juvenile Justice Services Center, and he continued the matter until March 14, 2017. [The administrative judge] confirmed the [juvenile master]'s February 28, 2017, recommendation on March 1, 2017.

On March 27, 2017, [the juvenile court] ordered that [J.S.] receive his medication forthwith and continued this matter until April 6, 2017.

On April 6, 2017, [the juvenile court] was advised that [J.S.] had several violations, had issues in school, had tested positive for marijuana and he was not taking his medicine. Accordingly, after he was given numerous attempts on probation, [the juvenile court] adjudicated [J.S.] delinquent and ordered him to pay Court Costs. [The juvenile court] directed that [J.S.] remain in Secure Detention at the Philadelphia Juvenile Justice Services Center and he be placed in a Residential Facility at George Jr. Special Needs Program. The Philadelphia Sheriff was ordered to transfer [J.S.] forthwith. [The juvenile court] also discharged [J.S.] from interim probation.

On April 17, 2017, [J.S.]'s counsel filed a Motion to Reconsider Delinquency Placement and requested that the Defendant be released from placement and placed on probation. The Motion to Reconsider Delinquency Placement was denied by operation of law pursuant to Rule 520 (D)(1) of the Pa Rules of Juvenile Court Procedure.

On April 20, 2017, [the juvenile court] ordered that [J.S. was] to remain in Secure Detention at the Philadelphia Juvenile Justice Services Center until a bed became available. The matter was continued until May 9, 2017 for a reconsideration. [J.S] was

transferred to the Residential Treatment Facility at George Jr. Republic on April 24, 2017.

On May 9, 2017, [the juvenile court] ordered [J.S.] to remain in his current placement and continued the matter until September 7, 2017 for review of placement.

On May 15, 2017, [J.S]'s counsel filed a [timely] Notice of Appeal and requested the Notes of Testimony from the Court Reporters.

Juvenile Court Opinion, 6/28/18, at 1-6.

As framed in his brief, J.S. indicates that on March 27, 2017, the juvenile court held a hearing to address J.S.'s medication issues. *See id.*, at 5. At that hearing, J.S.'s probation officer discussed J.S.'s prescribed regimen, J.S's issues with psychotropic medications, and a doctor's evaluation of J.S., who concluded that J.S. was not, at least at that point, in need of such a prescription. *See id.* However, the juvenile court simultaneously ordered J.S. to resume consumption of his medications and for J.S.'s then placement (the Philadelphia Juvenile Justice Center) to fill his prescriptions. *See id.*, at 6-7.

At a subsequent hearing, which occurred on April 6, 2017, J.S.'s probation officer identified that J.S. had negative side effects from his medications. *See id.*, at 7. Those side effects apparently caused J.S. to sleep all day. *See id.* It was at this hearing that J.S. was adjudicated delinquent, and correspondingly, the juvenile court ordered J.S. to be placed again at George Junior Republic so that he would receive his medication. *See id.*

From these hearings, J.S. submits that the juvenile court "was intent on forcing J.S. to resume taking the psychotropic medications that [he] had been

- 5 -

prescribed about a year previously while in a juvenile placement facility." Appellant's Brief, at 9. Moreover,

> the [juvenile] court pursued this goal without any medical reports or professional analysis indicating that J.S. was in need of medication, despite learning from the probation officer that the most recent medical doctor to examine J.S. had, in fact concluded that J.S. was *not* in need of medication, and despite hearing from J.S. that the medication caused sleep problems that had a serious impact on J.S.' life and schooling. The [juvenile] court's unreasonable, singleminded, and medically unsupported goal of forcing J.S. to take potent psychotropic drugs was not a legitimate basis for concluding that J.S. was in need of treatment, supervision and rehabilitation. Therefore, it was an abuse of the lower court's discretion to adjudicate J.S. delinquent on that basis, and this Court should reverse the adjudication.

*Id.*, at 9 (emphasis in original).

J.S.'s timely filed Rule 1925(b) Statement exclusively contends that the juvenile court "erred and abused its discretion in adjudicating J.S. delinquent where the evidence was insufficient that he/she was in need of treatment, supervision, or rehabilitation." J.S.'s Errors Complained of on Appeal, 6/13/17, ¶ 6(a). Conversely, J.S.'s argument in his brief posits the question:

> Did ... the juvenile court err and abuse its discretion in adjudicating [J.S.] delinquent in order to ensure [J.S.] took psychotropic medication, where [J.S.]'s most recent medical evaluation indicated that medication was not appropriate, and which was causing [J.S.] to sleep all day in school?

Appellant's Brief, at 3.

An appellant's Rule 1925(b) statement "shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii).

A Rule 1925(b) statement "which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [Rule 1925(b)] Statement at all," and will result in waiver. *Lineberger v. Wyeth*, 894 A.2d 141, 148 (Pa. Super. 2006). When an appellant challenges the sufficiency of the evidence, this Court has made clear our requirement that "an appellant's Rule 1925(b) Statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) (citation omitted).

J.S.'s Rule 1925(b) statement provides no indication that he is specifically challenging anything related to the compulsory consumption of medication. This omission is reflected in the fact that the juvenile court's opinion makes no explicit mention of it mandating that J.S. must continue his medication treatment and it adjudicating delinquency predicated on J.S.'s failure to take his medication. The juvenile court, instead, limited itself to a discussion of whether the totality of the circumstances warranted its finding that J.S. was delinquent and in need of treatment. *See* Juvenile Court Opinion, 6/28/18, at 7-11.

By filing an overly broad Rule 1925(b) statement, J.S. failed to alert the juvenile court to which aspects of the ultimate determination of delinquency he intended to challenge. Furthermore, J.S. had the opportunity to supplement his 1925(b) Statement. *See id.*, at 6 (indicating that J.S.'s

attorney informed the juvenile court that he would not be fling a supplemental 1925(b) Statement, but would instead rely only on the original Statement). Because he failed to provide a proper Rule 1925(b) statement, J.S. waived his challenge as to whether it was appropriate for the juvenile court to adjudicate J.S. delinquent on the basis that he was not continuing his medication regimen, as prescribed.

As to whether, more generally, the evidence was sufficient to support a finding that J.S. was in need of treatment, supervision, or rehabilitation, the "Juvenile Act grants broad discretion to the trial court in entering a dispositional order that finds a juvenile in violation of his probation; this Court will not disturb such a disposition absent a manifest abuse of discretion." *In Interest of P.S.*, 158 A.3d 643, 653 (Pa. Super. 2017). However, "[b]efore entering an adjudication of delinquency, the Juvenile Act requires a juvenile court to find that a child has committed a delinquent act *and* that the child is in need of treatment, supervision, or rehabilitation." *In Interest of N.C.*, 171 A.3d 275, 280 (Pa. Super. 2017) (quotations and citation omitted; alteration in original). "A determination that a child has committed a delinquent act does not, on its own, warrant an adjudication of delinquency." *Id.* (citation omitted). Procedurally,

> once the juvenile court determines the Commonwealth has proved beyond a reasonable doubt that the child committed the acts alleged, the court must enter that finding on the record. If the juvenile court makes such a finding, next, either immediately or at a hearing held within 20 days, the court must hear evidence as to whether the child is in need of treatment, supervision, or

rehabilitation. . . . If the court determines the juvenile is in need of treatment, supervision, or rehabilitation, the court shall enter an order adjudicating the juvenile delinquent and proceed in determining a proper disposition under Rule 512 [of the Rules of Juvenile Procedure].

*Id.* (citations and quotations omitted).

J.S. maintains that "the sole factor relied upon in determining that J.S. was in need of treatment, rehabilitation, or supervision … was the [juvenile] court's belief that J.S. should be forced to take psychotropic drugs." Appellant's Brief, at 13. Unequivocally, J.S. states that the juvenile court "addressed no other issues." *Id.* According to J.S., the juvenile court's only "evidence" of record in its determination that J.S. needed treatment, supervision, or rehabilitation was J.S. not taking his psychotropic medication. Therefore, J.S. contends that the record contradicts his need to take that specific medication, the juvenile court's adjudication of delinquency was an abuse of discretion. *See id.*, at 14.

Although J.S. has waived his argument as to whether it was appropriate for the juvenile court to adjudicate J.S. delinquent on the basis that he was not taking his medication, there is myriad evidence on record to find J.S. delinquent without exclusive consideration of his prescribed drug regimen. Thus, the juvenile court's supposed "sole factor relied upon" in its delinquency determination (i.e., psychotropic drugs) is clearly contradicted by the testimony elicited over the course of several hearings. Here, the juvenile court found, among other things, that

in the months leading up to his adjudication, [J.S.] has not responded positively to his current placement with his aunt, he failed to take responsibility for his actions, he had several violations, he had issues in school, he had unexcused absences, he was failing two (2) subjects and performing poorly in his other classes, he failed to appear for a psychiatric evaluation, he failed to take his required medications, he tested positive for marijuana on several occasions, and he failed to appear for follow-up drug testing on several occasions.

Juvenile Court Opinion, 6/28/18, at 11. From these transgressions, the juvenile court considered the evidence before it and concluded that J.S. "was in need of treatment, supervision, or rehabilitation." *Id.* The record supports the juvenile court's findings that there had been violations of J.S.'s probation. *See, e.g.*, N.T., 3/27/17, at 2, 9 (identifying J.S.'s positive screening for marijuana consumption and his unexcused school absences); *see also* N.T., 4/6/17, at 3. Moreover, J.S. admitted that he "was doing good [sic] when [he] was on [his] meds." N.T., 3/27/17, at 4. In responding to that statement and in light of J.S.'s actions, the juvenile court was frustrated that J.S. was "breaking all the rules." *Id.*, at 5. Furthermore, J.S. admitted that when he does not take his medication, he gets in trouble for the things that he does. *See* N.T., 4/6/17, at 4. Therefore, in balancing all of the considerations before it, the juvenile court concluded, in light of J.S.'s misdeeds, that an adjudication of delinquency was appropriate, that treatment by way of medication was proper, and that placement in the George Junior Special Needs Program was necessary.

Based on the foregoing, we conclude that the juvenile court did not commit a manifest abuse of discretion when it adjudicated J.S. delinquent and subsequently issued a corresponding dispositional order. Accordingly, the dispositional order entered by the juvenile court in this case is affirmed.

Dispositional order affirmed.

Judge Musmanno joins the memorandum.

Judge Nichols files a concurring statement.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/19